D006

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CLIFFORD L. BRODY

                                Plaintiff
                                *pro se*

v.

RICHARD ATKINS, CYNTHIA SAMUELS,
COBBLESTONE ASSOCIATES LLP,
DAVID M. SCHOENFELD,
WARD & KLEIN CHARTERED,
KATHRINA PETERSEN,
KUDER, SMOLLAR & FRIEDMAN, P.C.,
NATIONAL PROSTATE CANCER
COALITION,

                                Defendants

CA 1:07-cv-01899 *RMC*
District for District of Columbia

<u>Related Case</u>:
Adversary Proceeding 07-00902
Southern District of Maryland

<u>Related Case</u>:
Chapter 13: 07-11415
Southern District of Maryland

## <u>PLAINTIFF'S PRAECIPE</u>

Plaintiff Clifford L. Brody by and for himself submits copies of documents that have

been submitted to the US Bankruptcy Court for the District of Maryland (Greenbelt) with

information copies also submitted to the Superior Court of the District of Columbia in matters

that relate to the matter captioned above now before this Court, and in which certain proceedings

in those other venues are referenced in detail.

Bethesda, Maryland
December 14, 2007

Respectfully submitted by:

Clifford L. Brody
*pro se*

Clifford L. Brody
4914 Crescent Street
Bethesda, Maryland 20816-1702
Home  301-320-3262
Cell    202-213-3076
Email  clbrody@verizon.net

**RECEIVED**

DEC 1 4 2007

                1

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this …..14…. day of __December_____, 2007, a copy of the foregoing was forwarded by First Class mail to Defendants and others at their offices or those of their attorneys, at

For Defendants Atkins, Samuels, Ward, and
Cobblestone:
David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

For Defendants Kuder and Peterson:
David B. Stratton, Esq.
Jordan Coyne & Savits, L.L.P.
1100 Connecticut Ave., N.W. Suite 600
Washington, D.C. 20036-4117

For Defendant National Prostate Cancer
Coalition:
Leslie A Epley
Crowell & Morning
1001 Pennsylvania Ave NW
Washington DC 20004-2595

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

_____
Clifford L. Brody

COPY

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND

CLIFFORD L. BRODY

                                        Plaintiff
                                        *pro se*

v.

RICHARD ATKINS, CYNTHIA SAMUELS,
COBBLESTONE ASSOCIATES LLP,
DAVID M. SCHOENFELD,
WARD & KLEIN CHARTERED,
KATHRINA PETERSEN,
KUDER, SMOLLAR & FRIEDMAN, P.C.,
NATIONAL PROSTATE CANCER
COALITION,

                                        Defendants

Adversary Proceeding 07-00902
Southern District of Maryland

*Related Cases:*

Chapter 13: 07-11415-TJC
Southern District of Maryland

CA 1:07-cv-01899-RMC
District for District of Columbia

## PLAINTIFF'S MOTION TO CONTINUE STATUS HEARING
## SCHEDULED FOR DECEMBER 5, 2007

COMES NOW Plaintiff Clifford L. Brody before the Court with a Motion, pursuant to Local

Rule 5071-1, to request a Continuance of the Status Hearing set for Wednesday, December 5, 2007, at 2

pm, for at least two calendar weeks. The reasons are the substantially-delayed receipt by Plaintiff, only

on November 30, 2007, of copies of Motions filed five days earlier on November 26, 2007 by Defendants

Ward & Klein Chartered, Richard Atkins, Cynthia Samuels, and Cobblestone Associates LLP

(collectively "Movants"), and the resulting 2-business-day period remaining to Plaintiff to respond in

writing to those Motions.

1.      The sole Exhibit attached hereto reflects the interim dialogue regarding the requested

Continuance begun by Plaintiff on December 3, 2007 with Movants and other Defendants named in the

RICO Complaint who are also parties in this Adversary pleading.

2.      As reflected in the Exhibit, the related cases noted in the heading together with their antecedents,

in which Movants have figured as parties and/or legal counsel, have been marked over more than a year's

time by their well-documented and explicitly stated inability to know, recall, or act on the fact of Plaintiff's actual address, and their claimed inability over several months to deliver copies of filings and other documents to Plaintiff on a timely basis as required by relevant state or federal court rules.

3.      It is premature to declare with any degree of confidence whether Movants still have this problem as they are suggesting[1], or whether the 5-day delivery delay resulted from either their failure to mail the documents on a timely basis or from the slow handling and delivery by the USPS of an envelope that Movants have attested they mailed on November 26, 2007.  While there is no postmark on the actual envelope[2], the USPS is apparently able to research and likely determine with certainty when the envelope was actually mailed.[3]  Plaintiff has asked for the results of that search (which could take weeks or months).

4.      Notably, although Plaintiff and all Defendants may disagree substantively on many aspects of the present matter and related cases, other Defendants have always been professional and prompt in their communications with Plaintiff, including timely delivery of documents.

5.      Plaintiff specifically seeks, with his Motion to Continue, an adequate amount of time to respond to the seemingly sarcastic assertions in the Movants' motion, namely that:

> "Debtor seems to ignore the fact that his assets and income are currently being administered by this Court as a direct result of Debtor having filed his voluntary petition herein. That Estate includes potential causes of action which the Debtor may have against claimants against his Estate (such as ATKINS, SAMUELS and COBBLESTONE), as well as against third parties (i.e. – SCHOENFELD, WARD & KLEIN). With limited exception, this Court is the sole forum empowered to hear and decide issues affecting Debtor's Estate, including his entitlement to economic damages for the defendants' alleged RICO violations.

6.      It is the issue of that "limited exception", to use Movants' own language, which is at the heart of the issue they raise and for which Plaintiff seeks a reasonable amount of time to research, respond, and submit for the record his written views on that subject.

7.      Of note: Defendant Schoenfeld's suggestion about electronic filing, reflected in the Exhibit, is constructive.  Plaintiff agrees that it would be far more efficient for him to use electronic filing.  Plaintiff

---

[1] See Exhibit p 1
[2] The envelope bore postage purchased from third-party on-line vendor, Stamps.com
[3] Plaintiff understands, hopefully correctly, this involves review of two audit trails: stamp purchase & stamp use

certainly knows how to create and deliver PDFs, emails, and the like, and sees these resources as far more efficient than having to deliver in person or have delivered his filings to the Greenbelt intake center, with one consequence being that Defendants in this matter themselves suffer an unneeded delay knowing what Plaintiff has filed while mailed envelopes with copies work their way from him to them. To help alleviate this problem, Plaintiff has done his best, on a fully elective basis, to send PDFs of his filings to Defendants, even though he is not so required.

8.      However, clerks at this Court, the Federal District Court for the District of Columbia, and the Superior Court of the District of Columbia all advise Plaintiff that he is not eligible to file or receive documents electronically because he is acting *pro se.* Allowing that he may be misreading the matter, Plaintiff has interpreted the written rules of these courts as confirming this ineligibility.

9.      Plaintiff accepts that there is doubtlessly good and valid reason for this stricture. However, one consequence is that if he cannot file electronically, he is working at a distinct time and cost disadvantage, particularly with regard to the *notification* of filings *vis a vis* all other parties to the case who receive electronic notification. As the five-day-delivery of the Movants' motions amply demonstrates, in this situation, Plaintiff risks losing critical time he would otherwise have to respond to Movants' filings.

10.     If the Dec. 5 Status Hearing is reserved only for addressing administrative matters rather than evaluation of any substantive matter raised by Plaintiff or Defendants in their respective filings to this Court, and if Plaintiff's own lack of knowledge of the judicial process is therefore causing him to ask for a continuance where one may not be needed[4], Plaintiff apologizes in advance and will respect the Court's guidance in this regard, for all he seeks is an appropriate amount of time affording him the opportunity to address the issue noted above in ¶6.

*(rest of page intentionally blank)*

---

[4] Shakespeare said it better in 1598: "Much Ado About Nothing"

**WHEREFORE,** for the reasons set forth above, Plaintiff requests that this Court agree to continue the Dec. 5, 2007 hearing for at least two calendar weeks.

Bethesda, Maryland
December 4, 2007

Respectfully submitted by:

_____/s/ Clifford Brody_____
Clifford L. Brody
*pro se*

Clifford L. Brody
4914 Crescent Street
Bethesda, Maryland 20816-1702
Home   301-320-3262; Cell: 202-213-3076 (better)
Email   clbrody@verizon.net

## AFFIRMATION

I, Clifford L. Brody, solemnly swear or affirm under criminal penalties for the making of a false statement that I have read the foregoing Motion and documents attached thereto and that the factual statements made therein are true and correct to the best of my personal knowledge, information and belief.

_____December 4, 2007_____
Date

_____/s/ Clifford Brody_____
Clifford L. Brody

Copies to:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _4_ day of __December__, 2007, a copy of the foregoing and related attachments was forwarded by First Class mail and by email where possible to Defendants at their offices at:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered

2275 Research Blvd., Suite 720
Rockville, MD 20850
Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

___/s/ Clifford Brody_____
Clifford L. Brody

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| CLIFFORD L. BRODY<br><br>            Plaintiff<br>            *pro se*<br><br>v.<br><br>RICHARD ATKINS, CYNTHIA SAMUELS,<br>COBBLESTONE ASSOCIATES LLP,<br>DAVID M. SCHOENFELD,<br>WARD & KLEIN CHARTERED,<br>KATHRINA PETERSEN,<br>KUDER, SMOLLAR & FRIEDMAN, P.C.,<br>NATIONAL PROSTATE CANCER<br>COALITION,<br><br>            Defendants | Adversary Proceeding 07-00902<br>Southern District of Maryland<br><br>*Related Cases:*<br><br>Chapter 13: 07-11415-TJC<br>Southern District of Maryland<br><br>CA 1:07-cv-01899-RMC<br>District for District of Columbia |

### DRAFT ORDER

Upon consideration of Plaintiff's Motion to continue the Status Hearing in the above-captioned

matter scheduled for December 5, 2007 at 2:00 pm, it is this _____ day of _____, 2007

hereby:

**ORDERED,** that the Status Hearing in the above-captioned matter is hereby rescheduled for

_____ _____ , 200___.


_____
The Honorable Judge Thomas J. Catliota
United States District Court for the Southern District of
Maryland

Copies to:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

COPY

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MARYLAND

CLIFFORD L. BRODY

                    Plaintiff
                    *pro se*

v.

RICHARD ATKINS, CYNTHIA SAMUELS,
COBBLESTONE ASSOCIATES LLP,
DAVID M. SCHOENFELD,
WARD & KLEIN CHARTERED,
KATHRINA PETERSEN,
KUDER, SMOLLAR & FRIEDMAN, P.C.,
NATIONAL PROSTATE CANCER
COALITION,

                    Defendants

Adversary Proceeding 07-00902
Southern District of Maryland

*Related Cases:*

Chapter 13: 07-11415-TJC
Southern District of Maryland

CA 1:07-cv-01899-RMC
District for District of Columbia

## PLAINTIFF'S RESPONSE TO AND MOTION TO DISMISS MOTIONS FILED BY DEFENDANTS KUDER, SMOLLAR & FRIEDMAN, P.C. AND KATHRINA S. PETERSON, ESQUIRE AND BY DEFENDANT NATIONAL PROSTATE CANCER COALITION

COMES NOW Plaintiff Clifford L. Brody before the Court with a Motion to deny the Motion to Dismiss ("Motion") submitted by Defendants Kuder, Smollar & Friedman ("Kuder") and Kathrina Peterson ("Peterson"), herein jointly referred to as "Kuder Defendants", and by Defendant National Prostate Cancer Coalition ("Defendant NPCC"). In submitting their Motions, Kuder Defendants and Defendant NPCC are attempting to impose on the Court a purported set of facts cited therein that are neither factual nor truthful and, in the case of Kuder Defendants, to knowingly contrive, submit, ask the Court to rely on a fraudulent affidavit for the express purpose of deceiving the Court and causing it to reach an unwarranted decision on their Motion.

1

As the Court is aware, on November 20, 2007, Plaintiff filed with this Court a Motion to Remand[1] to the US District Court for the District of Columbia the matter (CA 1:07-cv-01899-RMC) upon which Kuder Defendants base their Motion. With full deference to the discretion of the Court, Plaintiff respectfully suggests that it is in the interests of justice to all parties to make a determination on Plaintiff's Motion to Remand prior to considering any of the Defendants' motions filed with the Court.

WHEREFORE, for all the reasons set forth above, in the attached Memorandum of Grounds and Authorities, and in the above-referenced Motion to Remand, Plaintiff requests that this Court agree to his Motion to Remand, a copy of which is attached hereto, based on the facts and precedents cited therein as well as the facts and precedents cited below, to deny all other Defendants' motions submitted to support their counter-claim, and to award such other relief as is just as a result of Kuder Defendants' *prima facie* efforts to fraudulently deceive the Court.

Bethesda, Maryland
November 30, 2007

Respectfully submitted by:

Clifford L. Brody
*pro se*

Clifford L. Brody
4914 Crescent Street
Bethesda, Maryland 20816-1702
Home   301-320-3262
Cell     202-213-3076
Email   clbrody@verizon.net

---

[1] Motion to Remand the underlying the Notice of Removal ("Notice") submitted on November 5, 2007 to this Court by Defendants Richard Atkins ("Atkins"), Cynthia Samuels ("Samuels"), Cobblestone Associates LLP ("Cobblestone"), David Schoenfeld ("Schoenfeld") , and Ward & Klein, Chartered ("Ward") (collectively referred to within this document as "Movants"). In their Notice, Movants seek to remove from Federal District Court for the District of Columbia to the Federal District Court for the Southern District of Maryland the civil RICO complaint, 1:07-cv-01899-RMC filed by Plaintiff on October 22, 2007 with the DC District Court.

## AFFIRMATION

I, Clifford L. Brody, solemnly swear or affirm under criminal penalties for the making of a false statement that I have read the foregoing Motion and documents attached thereto and that the factual statements made therein are true and correct to the best of my personal knowledge, information and belief.

_November 30, 2007_
Date

Clifford L. Brody

Copies to:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30 day of November , 2007, a copy of the foregoing and related attachments was forwarded by First Class mail to Defendants at their offices at

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

_____
Clifford L. Brody

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND

CLIFFORD L. BRODY

                    Plaintiff
                    *pro se*

v.

RICHARD ATKINS, CYNTHIA SAMUELS,
COBBLESTONE ASSOCIATES LLP,
DAVID M. SCHOENFELD,
WARD & KLEIN CHARTERED,
KATHRINA PETERSEN,
KUDER, SMOLLAR & FRIEDMAN, P.C.,
NATIONAL PROSTATE CANCER
COALITION,

                    Defendants

Adversary Proceeding 07-00902
Southern District of Maryland

*Related Cases:*

Chapter 13: 07-11415-TJC
Southern District of Maryland

CA 1:07-cv-01899-RMC
District for District of Columbia

## GROUNDS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS MOTIONS FILED BY DEFENDANTS KUDER, SMOLLAR & FRIEDMAN, P.C. AND KATHRINA S. PETERSON, ESQUIRE AND BY DEFENDANT NATIONAL PROSTATE CANCER COALITION

Plaintiff Clifford L. Brody moves to deny all Motions filed in this Court separately and / or

jointly in whole or part by the Defendants Kuder, Smollar & Friedman, P.C., Kathrina S. Peterson,

Esquire ("Kuder Defendants"), and National Prostate Cancer Coalition ("NPCC") , whose motions

directly or indirectly call for the civil RICO Complaint CA 1:07-cv-01899-RMC filed by Plaintiff in the

Federal District Court for the District of Columbia to be effectively removed from that Court where it was

originally filed, and instead to be heard substantively by this Court. Plaintiff additionally moves to have

the RICO Complaint remanded without further delay to the Federal District Court for the District of

Columbia.

The grounds and authorities upon which Plaintiff relies in seeking this ruling from the Court are

set forth below in three parts: a) introductory comments, b) comments related to the "Introduction"

portion of Kuder Defendants "Memorandum of Grounds and Authorities" accompanying their motion, and c) comments on the specific inappropriateness of Arguments A through F of Kuder Defendants' Memorandum. Though furnished in specific response to the Kuder Motion, Plaintiff's comments apply in substance to the Motion submitted by Defendant National Prostate Cancer Coalition.

## I.  INTRODUCTION

1.    Virtually all matters raised in Defendants' various filings in the Adversary Complaint reflect three fundamental questions that are demonstrably highlighted by the Memorandum furnished to the Court as a part of the Kuder Defendants' Motion:

   a.    First, whether this Court is the proper venue for hearing any aspect of the RICO Complaint and, as an ancillary matter raised in Plaintiff's Motion to Remand, whether Defendants Ward & Klein Chartered and David M. Schoenfeld, Esquire are conflicted and thus cannot represent Defendants Richard Atkins, Cynthia Samuels, and Cobblestone Associates LLC in any way in this matter,

   b.    Second, whether the questions raised by Defendants in one or another of their motions are germane or, in some cases, even truthful, and

   c.    Third, only if they are deemed germane and wholly truthful, in what order those questions should be addressed and disposed of by this or any Court.

2.    The first issue is presumably soon to be addressed, perhaps at the Status Hearing set by the Court for Tuesday, December 5, 2007 at 2 pm. Plaintiff believes that any consideration of any substantive matter arising from Defendants' motions would be premature until a decision is rendered by this Court on Plaintiff's Motion to Remand.

3.    The second issue, whether the substantive issues raised in the Kuder Defendants' Memorandum and the equivalent National Prostate Cancer Coalition document are germane and truthful, is addressed below with deserved care and detail.

4.    The third issue is taken up in Plaintiff's Motion to Remand, which Plaintiff here reiterates only in summary form, namely that:

    a.    removal is warranted only when the original case is filed in a state court;

    b.    Plaintiff's original complaint was not filed in a state court;

    c.    there is no diversity issue raised by any RICO Defendant that would warrant removal of proceedings from one federal court to another, especially given the absence of any multi-jurisdictional issue that would warrant consolidation, and

    d.    no claim identified in the RICO Complaint arises out of any claim made by the Plaintiffs in the Superior Court of the District of Columbia case to which Defendants say Plaintiff is making a counterclaim.

5.    Plaintiff readily concedes that, as a general matter, the issues raised by the RICO Complaint as challenged by Kuder Defendants reach to:

    a.    whether intentional misrepresentations to a court, perjury, and suborning perjury by one or more of the named RICO Defendants were illegal and so-called RICO predicate acts,

    b.    whether funds received by one or more of the named RICO Defendants in course of their illicit activities were plowed back into organizations used by these perpetrators to further their illicit goals,

    c.    whether one or more of those named RICO Defendants controlled in any way the resources of those organizations named as Defendants in the RICO Complaint,

    d.    whether there has been a pattern of these activities, and

    e.    whether, taken together, these actions amount to racketeering.

6.    That these activities took place while one or another separate legal proceeding unfolded may be important to note for establishing time and date of specific RICO Defendant illegal activities, but the existence of those separate legal proceedings are not dispositive in any way with respect to evaluating the RICO Complaint.

## II. ISSUES ARISING FROM KUDER MEMORANDUM "INTRODUCTION" SECTION

### KUDER DEFENDANTS' ASSERTIONS THAT THE "COBBLESTONE MATTER" IS THE UNDERLYING MATTER IN THE RICO COMPLAINT, OR THAT RICO COMPLAINT IS IN FACT A COUNTERCLAIM IN THAT MATTER, ARE NOT BORNE OUT BY ANY FACT

7.      Kuder Defendants assert on page 1 of their Memorandum of Grounds and Authorities

("Memorandum"[2]) as well as in many other places in their Memorandum that the Cobblestone case to

which they refer is "...the *underlying matter...* " of Plaintiff's RICO Complaint.

8.      This construct is wholly an invention on the part of Kuder Defendants and in no way reflects the

wording of Plaintiff's RICO Complaint or the facts of Kuder Defendants' illicit activities described in that

Complaint.[3]

9.      Nowhere in the RICO Complaint does Plaintiff claim that the claims set forth in the Cobblestone

complaint was or is a basis for any RICO claim.  As clearly stated in the RICO Complaint, the underlying

matter in that Complaint is the conspiracy of all Defendants named therein to take a series of illegal

racketeering actions, separately and together, that caused harm to Plaintiff.

10.     Kuder Defendants expressly confirm this in their wholly speculative statement (without citing any

basis in fact) that "...The criminal enterprise alleged by Brody *appears to be* (emphasis added) the filing

of the Cobblestone action in the Superior Court of the District of Columbia, and fraudulent and

misleading filings, motions and other submissions to the Superior Court in that lawsuit..."

11.     Later in their Memorandum[4], Kuder Defendants again acknowledge and confirm that Plaintiff has

specified that Kuder Defendants' illicit activities, those that are indeed presented as part of the basis for

the RICO Complaint, were fundamentally separate and apart from the claims specified in the original

Cobblestone complaint.  Kuder Defendants even quote a portion of the RICO Complaint to confirm this:

> "Defendant Kathrina Peterson conspired to use the physical facilities and financial' assets of
> Kuder, Smollar & Friedman, P.C. to commit wire and mail fraud to support the activities of
> Defendant Schoenfeld to submit intentionally fraudulent and misleading filings, motions, and

---

[2] Plaintiff notes that references herein to portions of Kuder Defendants' Memorandum are by page number and apparent paragraph order on a given page, absent any paragraph numbering in that Memorandum.
[3] Plaintiff addresses in detail in the attached Motion to Remand that the RICO Complaint cannot be considered a counterclaim in the Cobblestone matter.
[4] See Memorandum, p 14

other documentary material to the Superior Court ... and to enrich herself through the attorney's fees obtained in connection with the aforementioned Lawsuits as a result of her representation of Related Party Barbara DeClerk.

12.    The RICO Complaint indeed specifies that Kuder Defendants colluded to commit illegal acts with other Defendants coterminous with the Cobblestone matter but which on their face fall entirely outside the scope of the Cobblestone plaintiffs' complaint and instead fall within the scope of RICO activities defined in Title 18.

## KUDER DEFENDANTS PRESENT NUMEROUS ADDITIONAL FALSE AND MISLEADING STATEMENTS IN THE INTRODUCTION

13.    Kuder Defendants intentionally misstate fact in suggesting that Plaintiff has alleged that Defendants Peterson and Kuder used the US mails to "...illegally obtain..." documentation.  Plaintiff's RICO Complaint instead states that Kuder used the US mails, among other purposes, to illegally share certain information that it had no authorization to share without the owners' prior consent, and that these actions together with the other predicate acts detailed in the RICO Complaint caused injury to Plaintiff.

14.    Kuder Defendants also falsely assert that Plaintiff has argued in his RICO Complaint that the Kuder Defendants owed him fiduciary duties when in fact, Plaintiff has never so claimed.  The RICO Complaint instead points to Kuder Defendants' illegal violation of certain fiduciary duties owned but not met by those Defendants as a consequence of their illicit racketeering activities *and* the pattern of those activities, the consequences of which harmed Plaintiff as well as others.  In and of themselves, those activities fall well within the definition of "predicate acts" as defined in Title 18.

15.    As to Kuder Defendants' false assertion that there was no collusion between Kuder and RICO Defendants Ward & Klein Chartered and David M. Schoenfeld during the course of the Cobblestone matter, Plaintiff cautions that Defendants Kuder, Smollar & Friedman, P.C. and Peterson are well aware that there was extensive collusion.

16.    Kuder Defendants themselves confirm that one Defendant in the Cobblestone matter was indeed dismissed from that lawsuit, but they intentionally fail to disclose their actions, reflecting illegal collusion with other named RICO Defendants which led to that to that dismissal.  A substantial body of evidence

exists demonstrating this collusion, known by the Kuder Defendants to include emails, phone calls, and

statements (truthful and not) originated both by Kuder Defendants and other Defendants named in the

RICO Complaint. That evidence, certain to emerge during discovery, includes statements by other

Defendants, recorded in transcripts of official Superior Court case proceedings, confirming intentional

perjury in an effort to hide this collusion.

17.     With reference to Kuder Defendants' straw man issue that they never represented him, Plaintiff

confirms again what Kuder Defendants know, namely that he has never claimed that Kuder, Smollar &

Friedman, P.C. ever represented him and instead that evidence exists that shows Kuder Defendants misled

and lied to their own client in a manner to intentionally harm Plaintiff, in itself a predicate act that, when

taken together with others, form precisely the "pattern" of illegal activity undertaken by Kuder

Defendants.


### III.     ISSUES RAISED IN KUDER MEMORANDUM "ARGUMENT" SECTION

#### FRAUDULENT INFORMATION AND DOCUMENTATION SUBMITTED BY KUDER DEFENDANTS IN SUPPORT OF THEIR MOTION TO QUASH SERVICE (§A) ARE PRIMA FACIE EVIDENCE OF THE PATTERN OF THEIR RICO ACTIVITIES

18.     Assertions in §A, p.4 of the "Argument" are in and of themselves direct evidence of the scope of

Kuder Defendants' racketeering activities, in that the information presented therein is false and

intentionally mendacious from beginning to end, and known to be so both by the affiant identified in the

affidavit ("Kuder affidavit") attached thereto, by Kuder Defendants themselves, and arguably by their

counsel their counsel David B. Stratton, and Jordan, Coyne & Savits LLP ("Kuder Defendants' Counsel").

19.     Specifically, Kuder Defendants are falsely asserting, in a fanciful statement of alleged facts, that

service of the RICO Complaint was made to them by Fedex delivery. Notably, Kuder Defendants do not

provide, nor does Kuder Defendants' Counsel appear to have taken any steps to verify with them, the

existence of any documentation normally issued and left by Fedex with every addressee, that would

support their claim.

20.     Kuder Defendants cannot provide that documentation because they know that their assertions related to Fedex delivery are intentionally mendacious on their face. Exhibit A, attached hereto, clearly demonstrates that service was made by United State Postal Service Overnight Express Delivery, Signature Required of Addressee (Defendant Peterson), exactly as service was made to all other RICO Defendants, and in a manner that fully comports with applicable rules defined in the FRCP and associated "state" rules (rules of Superior Court of the District of Columbia).

21.     As to who signed appropriately or not for the USPS delivery on Kuder Defendants' behalf, both the Kuder Defendants *and* their counsel know that it is the responsibility of Kuder Defendants to train their own employees to act responsibly when the United States Postal Service delivers a mailing and asks for the signature of the named addressee. That Kuder's employee may not have done the right thing in seeking out for delivery the named addressee is the fault of Kuder, not Plaintiff.

22.     That the affiant has not told the truth in her affidavit as to what actually happened is self-evident. There is no "Oops, Sorry, My Mistake!" factor at play here. Kuder Defendants' carefully-scripted §A Motion To Quash and the wholly untruthful Kuder affidavit attached thereto are hardly attributable to a well-meaning person, not practiced in the law, who may have merely forgotten something or is suffering hazy memory of an event. Neither Kuder Defendants nor their Counsel are newcomers to the legal profession. Even before the filing of their Motion, they clearly knew, or clearly should have known, that if there was such a blatant contravention of service requirements as they so eloquently if falsely assert, there would have been a Fedex envelope, label, or other such evidence for them to photocopy and attach to their Motion to Quash.

23.     Rather than furnishing such evidence, they have intentionally chosen to contrive a patently false and fraudulent scenario and incorporate it into a sworn statement attached to their Motion, perhaps pressuring their own employee to sign that statement. While their actions *vis a vis* their own employee remain to be verified during discovery, an intentionally false affidavit knowingly submitted by members of the bar in a court proceeding is a matter which requires the most careful scrutiny.

24.     In this regard, Kuder Defendants' own extract citation of Rosengarten v Buckley 565 F Supp

193, 196 D. Md 1982 is telling:

> "Generally, a plaintiff must prove five elements by 'clear and convincing evidence' to prevail on
> a fraud claim. See e.g., Armstrong v Accrediting Council Continuing Educ. & Training, Inc., 961
> F. Supp. 305, 309 (D.D.C. 1997). They are: (1) a false representation, (2) in reference to a
> material fact, (3) made with the knowledge of its falsity, (4) with the intent to deceive, and (5) on
> which action is taken in reliance upon the representation."

25.     Whatever else it is, the Kuder affidavit is (1) a false representation, (2) in reference to a material

fact, (3) made with the knowledge of its falsity, (4) with the intent to deceive, and (5) on which action is

taken in reliance upon the representation.  Sadly, the persons intended to be deceived by the Kuder

Defendants include not just the Plaintiff but the Court as well.  By no means is the Kuder Affidavit the

only example of Kuder Defendants' racketeering actions as detailed in the RICO Complaint, but it is

certainly one that is now self-evident to all parties and the Court.

### KUDER DEFENDANTS' ARGUMENTS IN §B AND §C OF THEIR MEMORANDUM CONTRADICT ONE ANOTHER AND CONFIRM THAT, AS SET FORTH IN PLAINTIFF'S MOTION TO REMAND, THE RICO COMPLAINT SHOULD BE ADJUDICATED WHERE ORIGINALLY FILED.

26.     Kuder Defendants' arguments in their Memorandum Sec. B and C. are on their face self-

contradictory and underscore that Plaintiff's RICO Complaint should be adjudicated in the Federal

District Court for the District of Columbia.

27.     In Sec. B of their Memorandum, Kuder Defendants assert that Plaintiff's RICO Complaint is *not*

a core proceeding. By definition, this argument confirms that the RICO Complaint does not belong in this

Court.

28.     However, immediately thereafter in §C, Kuder Defendants assert "…that the bankruptcy trustee

[must] step[s] into the shoes of the debtor…" even though they earlier assert (Sec. B) that Plaintiff's

RICO Complaint is not one that arises from a right created or required by bankruptcy law.  They further

and plainly state on p 6 of their Memorandum that "…If a proceeding does not invoke substantive rights

created by bankruptcy law and is one that could exist outside of bankruptcy, it is a non-core proceeding,

8

even though it may be related to bankruptcy because of its potential effect on the estate..." [5] Plaintiff agrees.

29.    Kuder Defendants even assert on p. 6: "Here, Brody's claims for violations of RICO and breach of fiduciary duty are all independent actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court." Plaintiff agrees and notes that, in filing the RICO Complaint, he has taken exactly the actions that Kuder Defendants say he must.

30.    The sum and substance of Plaintiff's argument[6], and in this case, Kuder Defendants' arguments as well, is that Plaintiff 's RICO Complaint is not a core proceeding, does not belong before this Court in any form, and should be remanded to Federal District Court for the District of Columbia.

## KUDER DEFENDANTS' §C ARGUMENTS NOTWITHSTANDING, PLAINTIFF HAS STANDING TO PROCEED UNDER SEC (RICO)

31.    In §C (pp7 ff) of their Memorandum, Kuder Defendants argue with reference to several precedents that Plaintiff Brody lacks standing to file the RICO Complaint, despite their claims in §B of their Memorandum that Plaintiff *has* standing to file the Complaint.

32.    Kuder Defendants' incomplete reference to the language of Sec.11 U.S.C. §541 (a)(1) notwithstanding, the language of that statute is clear on its face in defining the meaning of "estate": "Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property *as of the commencement of the case.* (emphasis added).

33.    Kuder Defendants are plainly aware:

    a.      that the RICO Complaint was filed *after* the Chapter 13 filing,

    b.      that it in no way represents any effort by any party to hide the fact that the RICO Complaint was being filed,

    c.      that it relates if at all to potential property that did not exist as of time of the Chapter 13 filing, and

---

[5] Kuder Defendants cite these precedents to support their assertions: *Matter of Wood*, 825 F.2d at 93. *See also In re Apex Express Corp.*, 190 F.3d 624, 631 (4th Cir. 1999); *Millennium Studios, Inc. v. Man Roland, Inc.*, 285 B.R. 300 (D. Md. 2002.
[6] See attached Plaintiff's Motion to Remand, filed with this court on Date

d.  that it certainly involves activities of certain Defendants who have no claim whatsoever against
his estate.

34.  As to their creatively deceptive referral to the RICO Complaint as "...patently frivolous..." and
their assertion that only the Bankruptcy Trustee can pursue the RICO Complaint on behalf of Plaintiff,
Kuder Defendants do not, because they cannot, point to any statute that requires Plaintiff to assert his
clearly enumerated Title 18 rights only through the good offices of a person chosen by the United States
Department of Justice to remain wholly neutral in the determination of Chapter 13 proceedings involving
Plaintiff.

35.  Further, Kuder Defendants are not representing the Trustee and have no standing to assert the
Trustee's position in this matter.  It should be left to the Trustee to determine if he /she so wishes to
recommend that any authority of the US government should be representing directly or indirectly the
Plaintiff in, or taking a position with respect to, a RICO Complaint.

## PLAINTIFF IS NOT ESTOPPED TO RAISE RICO CLAIMS AS ASSERTED BY KUDER DEFENDANTS IN §D OF THEIR MEMORANDUM

36.  The *Richardson v UPS* precedent cited by Kuder Defendants[7] as reason that Plaintiff is estopped
from filing a civil RICO claim is part and parcel of a frivolous assertion without meaning in the present
matter.

37.  As the Kuder Defendants themselves so carefully note, the Richardson ruling reads precisely that:

> "A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to
> schedule, for the benefit of creditors, all his interests and property rights...the doctrine of judicial
> estoppel precludes 'a party from assuming a position in a legal proceeding inconsistent with one
> previously asserted.'"

38.  Kuder Defendants know that the *Richardson* decision speaks to actions "inconsistent with one
previously asserted." Nothing in Plaintiff's filing or substance of the RICO Complaint is inconsistent with
anything that Plaintiff has asserted in either the Chapter 13 filing, nor has any court anywhere ruled
otherwise.

39.  Instead, Kuder Defendants know, or certainly should know as a result of their legal training:

---

[7] Memorandum, p 8

a. that ample provision exists for a debtor to inform a Chapter 13 trustee of any material changes in the relevant estate,

b. that the trustee in Plaintiff's Chapter 13 filing is fully aware of the RICO filing,

c. that the RICO Complaint was filed *after* the Chapter 13 filing, and

d. that, generally speaking, there is no Title II provision that requires or even foresees clairvoyance on the part of a debtor in a Chapter 13 proceeding.

### KUDER DEFENDANTS' ASSERTION IN §E OF THEIR MEMORANDUM, THAT PLAINTIFF'S RICO COMPLAINT LACKS SUBJECT MATTER JURISDICTION, IS WHOLLY WITHOUT MERIT.

40. In their Memorandum §E, Kuder Defendants' citation of the so-called *Rooker-Feldman* doctrine, as well as the interpretation they assign it with regard to the referenced Chapter 13 proceeding, is wholly at variance not only with the *Rooker-Feldman* decision itself but the very extract of the findings quoted by the Kuder Defendants in their Motion and Memorandum.

41. Plaintiff has confirmed elsewhere herein, and in his Motion to Remand, that the RICO Complaint in and of itself is not a part of the Chapter 13 proceedings to which Kuder Defendants refer in §E, and he has asked this Court, in his Motion to Remand, to so rule.

42. While that ruling would apparently render needless any further discussion of the existence and meaning of the *Rooker-Feldman* doctrine as it relates to this matter, the *Rooker-Feldman* doctrine would not apply even if the Court were to give Kuder Defendants' assertion regarding *Rooker* substantive consideration.

43. Kuder Defendants know, or certainly should know as a result of their legal training, that the *Rooker-Feldman* doctrine refers to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court to review and rejection of those judgments."

44. Despite Kuder Defendants' brazen attempts to put such words in Plaintiff's mouth, none of those criteria apply to anything Plaintiff has stated in connection with his RICO Complaint. Rather, Kuder Defendants know, or certainly should know as a result of their legal training,

    a.    that a RICO Complaint is a federal question,

    b.    that Plaintiff's RICO Complaint does not ask the Federal District Court for the District of

         Columbia or any other federal court to pass judgment, one way or another, on any claim,

         counterclaim, or judgment rendered in the Superior Court of the District of Columbia case, and

    c.    that the RICO Complaint in no way "…complains … of injuries *caused by* state court

         judgments…" (emphasis added) and in no way invites any district court anywhere to

         "…review…" no less "…reject…" any state court judgment.

45.     Instead, the racketeering activities undertaken by Kuder Defendants collaborating with other

RICO Defendants, which are clearly specified in the RICO Complaint, include but are hardly limited to

illicit activities taken under cloak of legal proceedings in another court[8] and apparently in this Court as

well, given the false affidavit intentionally submitted to this Court by Kuder Defendants with their

Motion.

46.     For Kuder Defendants to assert – as they do explicitly – that Plaintiff is claiming otherwise, e.g.

    a.    that he is seeking federal court review of a state court judgment, or

    b.    that he is "… inviting a federal court to review the same evidence submitted to the D.C.

         Superior Court,

    c.    that he is asking this Court to "…reject the results reached by that court…" no less "…order

         the disgorgement of any fees and awards received in those proceedings…" or "…require that

         those funds be paid over to him…"[9].

is for the Kuder Defendants not simply to intentionally and falsely put words in Plaintiff's mouth but also

to demonstrate their intent, willingness, and habit to play fast and loose with the truth.

47.     Likewise, Kuder Defendants' referral (§E, p 10) to *Kenmen Eng 'g v. City of Union,* 314 F .3d

468, 473 (10'h Cir. 2002) is wholly spurious. Plaintiff has not claimed, nor does he even believe, that the

Cobblestone matter is the basis for a civil RICO claim of injury. Plaintiff reiterates that Kuder

---

[8] Superior Court of the District of Columbia
[9] Kuder Defendants' Memorandum, p. 10 bottom

Defendants' own racketeering activities, whether undertaken separately or jointly with other RICO Defendants, have caused injury.

48.    Kuder Defendants also matter-of-factly opine, without any factual evidence whatsoever, (§E, p 11) that "…the entire premise of Brody's lawsuit is that the Cobblestone lawsuit was and is supported by "intentionally fraudulent and misleading filings, motions and other documentary material" as well as "perjury by complainants and witnesses… See Complaint at 32"

49.    Plaintiff invites Kuder Defendants to carefully read the actual wording of the §32 to which they refer. §32 refers explicitly to the predicate acts committed by certain RICO Defendants in the course of their racketeering activities. Moreover, Kuder Defendants are fully aware that the Cobblestone matter is still before the Superior Court of the District of Columbia, and that Plaintiff has addressed the substance of that matter, including filing a counterclaim, based strictly on the claims asserted by plaintiffs in that case.

## KUDER DEFENDANTS' §F ARGUMENTS THAT PLAINTIFF HAS NOT PROVIDED SPECIFICITY IN HIS RICO COMPLAINT IS BELIED BY THEIR OWN EXTENSIVE REFERENCE TO SPECIFIC CLAIMS ENUMERATED IN THAT COMPLAINT

50.    Kuder Defendants have taken two conflicting positions within §F, each profoundly contradicting the other:

a.    On the one hand, Kuder Defendants argue that that the RICO Complaint should be dismissed for reasons of Plaintiff's failure to state a claim with particularity[10].

b.    On the other, they cite several specific passages from the RICO Complaint setting forth the racketeering activities and related claim for injury caused with precisely the "who-what-when-where-why-how" particularity called for by relevant case law.[11]

51.    Moreover, in their wordy references[12] to a plethora of case law precedents emanating from factual circumstances and cases entirely different than, and unrelated to, those intrinsic to Plaintiff's RICO Complaint, Kuder Defendants also explicitly confirm the existence of the very specifics enumerated in

---

[10] Memorandum, p 11
[11] See, for example, Bankcard America, Inc. v. Universal Bancard Sys., 904 F. Supp. 753 (N.D.Ill. 09/29/1995)
[12] §F of Kuder Defendants' Memorandum (pp 11-18)

13

Plaintiff's RICO Complaint that elsewhere in their Memorandum the Kuder Defendants say are non-existent. Much of the RICO Complaint specificity is literally cited *word for word* by Kuder Defendants in their Memorandum even as they claim, oddly, that no specificity exists. As examples:

    i.   On p 16 of their Memorandum, Kuder Defendants assert that "…Here, Brody's alleged damages are the business interruption losses, contract losses, legal expenses, and bankruptcy proceedings that all *supposedly were caused by the Cobblestone action…*" (emphasis added); Of note: Kuder Defendants' use of the words "…supposedly were caused by the Cobblestone action" is a contrived artifice by Kuder Defendants, given that the RICO Complaint nowhere contains such a cause-effect statement).

    ii.   On p. 14 of their Memorandum, Kuder Defendants quote these specifics directly from the RICO Complaint:

> Defendant Kathrina Peterson conspired to use the physical facilities and financial assets of Kuder, Smollar & Friedman, P.C. to commit wire and mail fraud to support the activities of Defendant Schoenfeld to submit intentionally fraudulent and misleading filings, motions, and other documentary material to the Superior Court … , and to enrich herself through the attorney's fees obtained in connection with the aforementioned Lawsuits as a result of her representation of Related Party Barbara DeClerk.

52.    Kuder Defendants also fail to disclose, in arguing that Plaintiff has not stated a claim, the full depth and breadth of the so-called Katzman decision (*Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1999)*) that they put forth as case law supporting their argument.

53.    In fact, the Katzman decision speaks to wholly different circumstances than those stated by Kuder Defendants, namely whether claims that were advanced by the plaintiff in that case amounted to RICO practices, and whether the *attorney* representing that party had good cause to know whether the complaint filed by his counsel was "…"objectively unreasonable…" (*Katzman, 167 F.R.D. at 654, 660*).[13]

---

[13] See, for example, *Online Dynamic Pricing: Efficiency, Equity and the Future of E-commerce*, by Robert M. Weiss and Ajay K. Mehrotra, quoted here at length:
¶28-Beyond antitrust law, at least one set of consumers has creatively attempted to use existing criminal law to address price discrimination in mail-order catalogues.[33] In 1996, Denise Katzman filed a class action lawsuit against Victoria's Secret Catalogue alleging that the catalogue company violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by providing different discounts to different groups of customers.[34]… In her complaint, Katzman argued that the catalogue company's discriminatory pricing structure constituted "racketeering activity under the RICO stature [sic]."[36]…

54.    Plaintiff takes no issue with the requirement, evidenced (if not always correctly) in the numerous precedents cited by Kuder Defendants in their Memorandum §F, that points to the necessity of specificity with regard to claims. On the face of it however, and as confirmed by the very extracts from the RICO Complaint that Kuder Defendants themselves quote, the RICO Complaint provides considerable specificity and in doing so fully meets that requirement.

55.    Relevant case law appears to fully support this conclusion, taking into account decisions on this subject that have issued from Courts in the Fourth District specifically with reference to civil RICO complaints. Those decisions echo yet other precedents, arising from litigation in this District and others, that identify how the test of particularity is met, namely by centering on the common sense benchmark of who, what, when, where, why, and how[14].

56.    This was made clear, for example, when the defendants' motion to dismiss for lack of specificity in a RICO matter was rejected in *in re American Honda Motor Co.*, 941 F. Supp. 528 (D.Md. 08/30/1996). Judge Motz' memorandum decision included these observations:

> [46] I next move to the most overarching argument made by all of the various defendants in support of the present motions to dismiss. Defendants assert that plaintiffs have failed to allege sufficient injury to have standing under the RICO and antitrust statutes…"
>
> [47] Plaintiffs respond that they have adequately pled injury and that any difficulties in proof, quantification, or allocation of damages are matters for later stages of this litigation…"
>
> [51] Dismissal for lack of injury is appropriate where the claimed injury is not cognizable as a legal matter, not where the claimed injury is not easily susceptible to proof…"
>
> [52] Other than the statutory requirement that a plaintiff's injury must be in the nature of harm to business or property, however, RICO imposes no "heightened" standing threshold. In Sedima, the Supreme Court held that the statute's plain language requires only that the plaintiff "has been injured in his business or property by the conduct constituting the violation." 473 U.S. at 496. "The statute requires no more than this." Id. at 497. Sedima thereby foreclosed an attempt by several circuits to limit the scope of RICO by granting standing only to plaintiffs

---

¶ 29-The courts rejected Katzman's innovative legal arguments. Judge Robert W. Sweet of the U.S. District Court for the Southern District of New York dismissed Katzman's claims, ruling that "offering different discounts to different catalogue customers does not constitute mail fraud under any reading of the law."[37] In addition, Judge Sweet declared that Katzman's filings were "objectively unreasonable."[38] Because defendants were compelled to respond to "a patently meritless complaint" that caused "unwarranted adverse publicity,"[39] Judge Sweet imposed sanctions against Katzman's attorney for filing a frivolous suit, ordering him to pay defendants legal fees in the amount of $5,000.[40] The appeals court affirmed Judge Sweet's decision.[41]
¶30-The rulings in Katzman seem to suggest that retailers can, for legitimate business purposes, make distinctions between buyers…
[14] *Ibid.* Bankcard America, Inc. v. Universal Bancard Sys., 904 F. Supp. 753 (N.D.Ill. 09/29/1995)

alleging a "racketeering injury" distinct from any harm caused by predicate acts themselves. Id. ; see also Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1100 (2d Cir. 1988) (noting that section 1964(c) "contains no special limitation on standing"), cert. denied, 490 U.S. 1007, 104 L. Ed. 2d 158, 109 S. Ct. 1642 (1989). Courts have not hesitated, however, to dismiss RICO claims for lack of standing where plaintiffs have failed to allege a sufficiently palpable injury to business or property.

57.     Further reasoning presented by Judge Motz in Honda disclose a compelling Court interest in and

intent to allow proceedings to continue, rather than dismissing the plaintiffs' complaint, so as to achieve

greater definition and specificity as to the degree, depth and breadth of injury sustained by the plaintiffs.

(See also Kerby v. Mortgage Funding Corp., 992 F. Supp. 787 (D.Md. 01/8/1998, which refers in part to

the Honda decision in rejecting defendants' motion to dismiss for lack of specificity on the part of

plaintiff Kerby.)

58.     A substantial body of additional case law emerging from the Fourth District as well as other

federal courts generally takes account of the Supreme Court's decision in Conley (see *Conley et al. v.

Gibson et al.,* 78 S. Ct. 99, 355 U.S. 41 (U.S. 11/18/1957)), in which Justice Black, writing for the Court,

stated that:

> "...the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts
> upon which he bases his claim. To the contrary, all the Rules require is "a short and plain
> statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and
> the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate
> this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery
> and the other pretrial procedures established by the Rules to disclose more precisely the basis of
> both claim and defense and to define more narrowly the disputed facts and issues...the Federal
> Rules reject the approach that pleading is a game of skill in which one misstep ... may be
> decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a
> proper decision on the merits. Cf. Maty v. Grasselli Chemical Co., 303 U.S. 197."

59.     Cases emanating from the Fourth and other Districts underscore this even in matters involving

complex litigation where:

a.     Profound ambiguity exists as to whether  there has been violation of law or contract, e.g.

       *Hardwire LLC v. Goodyear Tire & Rubber Company,* 360 F.Supp.2d 728 (D.Md. 03/18/2005).

b.     Neither vagueness nor lack of detail is a sufficient ground on which to grant a motion to

       dismiss. *Hill v. Shell Oil Co.,* 78 F. Supp.2d 764, 775 (N.D.Ill. 1999) (quoting *Strauss v. City of*

*Chicago*, 760 F.2d 765, 767 (7th Cir. 1985)) (see *Gray v. Metts*, 203 F.Supp.2d 426 (D.Md. 05/20/2002)[15]

c.    A district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." (See *H.J. Inc. v. Nw. Bell Tel. Co., 492; U.S. 229, 249-50 (1989;* citing *Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)*).

d.    The court must accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to the plaintiff. (See *De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996)*).

e.    The test under Rule 11 is whether an attorney's conduct was "objectively reasonable at the time he or she signed the pleading, motion, or other paper." Rule 11 sanctions are only appropriate "where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands (see *Eastway Const. Corp. v. City of New York, 762 F.2d 243, 2nd Cir. 1985);* see also *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 167 (2d Cir. 1999).*"[16]

f.    The necessary elements for establishing wire fraud are: (1) the forming of a scheme to defraud, and (2) the use of mail or wire communications in furtherance of the scheme to defraud. See *United States v. Trapilo*, 130 F.3d 547, 551 (2d Cir. 1997); *Sumitomo*, 995 F. Supp. at 456. Furthermore, the "scheme to defraud need not contemplate the use of the mails as an essential part of the scheme as long as the mailing is incident to an essential part of the scheme." *Middlemiss*, 217 F.3d at 120 (quoting *United States v. Altman*, 48 F.3d 96, 102 (2d Cir. 1995)).[17]

---

[15] See also SWIERKIEWICZ v. SOREMA N. A., certiorari to the United States Court of Appeals for the Second Circuit No. 00-1853. Argued January 15, 2002--Decided February 26, 2002
[16] precedents cited in *"The Law and Tactics of Sanctions"* By C. William Phillips, Esq., Covington & Burling LLP New York, New York
[17] *USA Certified Merchants, LLC v. Koebel*, 262 F.Supp.2d 319 (S.D.N.Y. 05/14/2003), at [81]

g.   In order to prove a fraudulent scheme of any type, for both common law fraud or RICO fraud

schemes, it is necessary to show "a material, false representation, an intent to defraud thereby,

and reasonable reliance on the representation, causing damage to the plaintiff." *Katara v. D.E.*

*Jones Commodities, Inc.,* 835 F.2d 966, 970-971 (2d Cir. 1987); accord *Morin v. Trupin,* 711

F. Supp. 97, 105 (S.D.N.Y. 1989)[18] (Plaintiff stands by his claim, acknowledged by Kuder

Defendants in their Motion and Memorandum as an explicit part of the RICO Complaint, that

Defendant Peterson's intentional collusion with Defendant Schoenfeld empowered him to

knowingly make false statements, recorded as a matter of record, during the course of official

Superior Court of the District of Columbia proceedings).

h.   The decision in *Christie v. Public Service Electric and Gas Co.*, No. 04-5978 (D.N.J.

02/23/2006), which states in part:

> [55 in part] The burden of persuasion on a Rule 12(b)(6) motion to dismiss is a heavy
> one, and factual deficiencies such as those cited by PSE&G are not sufficient to justify
> dismissal of a claim before discovery has commenced.
>
> [56]   The pleading requirements of the Federal Rules "are based on notice pleading
> rather than fact pleading." Universe Tankships, Inc. v. United States, 528 F.2d 73, 75 (3d
> Cir. 1975). It is well-settled that a plaintiff need not plead evidence, and a simple
> statement of the claim is sufficient to put a defendant on notice of the nature of the
> claims. See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977) (holding that a
> plaintiff need not plead evidence, and need not plead the facts that serve as the basis for
> the claim); see also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (holding that a
> "complaint will be deemed to have alleged sufficient facts if it adequately puts the
> defendants on notice of the essential elements of the plaintiffs' cause of action").
> Christie's pleadings, while somewhat lacking in specifics regarding the NJLAD and
> NJFMLA claims, nevertheless meet this minimum requirement. PSE&G's arguments in
> support of the motion to dismiss are therefore unavailing, as they rely upon factually-
> undeveloped issues in a case in which discovery has, to the Court's knowledge, not even
> begun.
>
> [57]   Perhaps sensing that its motion to dismiss stood on shaky legal grounds, PSE&G
> seizes in its reply papers upon Christie's submission of extrinsic materials in opposition to
> the motion to imply that conversion of the motion to dismiss into a summary judgment
> motion is a fait accompli. (PSE&G Reply Br. Supp. Mot. Dismiss 1 ("Inasmuch as
> plaintiffs have submitted affidavits as part of their opposition papers, defendant
> understands that the Court will now treat its motion to dismiss as one for summary
> judgment.").) However, conversion of a Rule 12(b)(6) motion into a Rule 56 motion is a
> matter within the Court's discretion, and cannot be compelled by mere concession or

---

[18] *Ibid,* at [63]

agreement of the parties, nor is it mandated by the parties' mutual submission of extrinsic materials. See Kurdyla, 197 F.R.D. at 131.

[58]    PSE&G's request to convert its motion to dismiss into a motion for summary judgment motion is premature. PSE&G's arguments in favor of summary judgment, as reflected in its reply brief, are premised on complex factual analyses that this Court is unwilling to undertake in a case in which discovery has not even commenced. As noted by the district court in Kurdyla[19], where the arguments on summary judgment involve complex facts, conversion to summary judgment is inappropriate where discovery has not yet taken place.

60.    The decision rendered in *Swedish Civil Aviation v Project Mngmt Ent.*, (See *Swedish Civil Aviation Admin. v. Project Mgmt. Ent.*, 190 F.Supp.2d 785 (D.Md. 03/14/2002) is also instructive in this regard. In *Swedish*, the Court reiterated that requirements that fraud be pled with specificity also had to be interpreted in light of Rule 8(a) requiring only notice pleading. Presiding Judge Chasenow provided compelling, common-sense guidance for how this balancing of requirements hinges on the concept of "adequate notice", and how it can reasonably be achieved:

> "In balancing these two policies, 'the most basic consideration in making a judgment as to the sufficiency of a pleading is the determination of how much detail is necessary to give adequate notice to an adverse party and enable him to prepare an adverse pleading.'" Windsor Assoc., Inc. v. Greenfield, 564 F. Supp. 273, 280 (D.Md. 1983), quoting Charles Wright and Arthur R. Miller, *Federal Practice And Procedure*, § 1297, at 415 (1969). Given the thoroughness of SCAA's complaint and the fact that SCAA did plead several instances of alleged fraudulent behavior with specificity, SCAA gives PMEI adequate notice of the basis of its fraud and negligent misrepresentation claims.

61.    Decisions rendered in *Inkel v Bush* and *Platsky v. Central Intelligence Agency* also offer valuable guidance on how this balance can be achieved:

a.    (from Inkel v. Bush, 3:04cv69(JBA). (D.Conn. 10/19/2004) - A complaint must set forth "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (emphasis added) (quoting Fed.R. Civ. P. 8(a)(2)); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). A pro se complaint is held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Platsky v. CIA, 953 F.2d 26, 28 (2d Cir. 1991). Thus, "when an in forma pauperis plaintiff raises a cognizable claim, his complaint may not be dismissed sua sponte for frivolousness . . . even if the complaint fails to flesh out all the required details." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (internal quotation omitted). However, even a *pro se* plaintiff must give "fair notice" to defendants concerning the basis of his or her claims. Conley, 355 U.S. at 47.

---

[19] Kurdyla v. Pinkerton Security, No. 00-02401 (D.N.J. 10/13/2000), itself illustrative of a juridically efficient way to evaluate and decide Rule 12(b)(6) Motions To Dismiss.

b.    (from Platsky v. Central Intelligence Agency, 953 F.2d 26 (2nd Cir. 11/25/1991) - Pro se plaintiffs are often unfamiliar with the formalities of pleading requirements. Recognizing this, the Supreme Court has instructed the district courts to construe pro se complaints liberally and to apply a more flexible standard in determining the sufficiency of a pro se complaint than they would in reviewing a pleading submitted by counsel. See e.g., Hughes v. Rowe, 449 U.S. 5, 9-10, 101 S. Ct. 173, 66 L. Ed. 2d 163 (1980) (per curiam); Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam); see also Elliott v. Bronson, 872 F.2d 20, 21 (2d Cir. 1989) (per curiam). In order to justify the dismissal of a pro se complaint, it must be "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. at 521, 92 S. Ct. at 594 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)) at [12]… In light of these principles, we think that the district court should not have dismissed Platsky's complaints without affording him leave to replead…at [13]

62.    Thus, the §F issue at hand, distilled to its essential element, is whether Plaintiff in his RICO

Complaint has sufficiently presented enough detail of how Kuder Defendants' actions constitute a pattern

of racketeering activities to effectively provide Kuder Defendants adequate notice.

63.    The answer to that question is yes, especially when evaluated in light of

a.    the facts and precedents presented above,

b.    together with Kuder Defendants' own *Tal v Hogan* citation[20],

c.    *plus* the detailed citations Kuder Defendants have themselves extracted from the RICO

Complaint to present in their Motion,

d.    *plus* the evidence at hand of Kuder Defendants' own fraudulent engineering of an affidavit

attesting to a Fedex delivery that never took place.[21]

## KUDER DEFENDANTS' §F ASSERTION THAT DEFENDANT PETERSON NEVER HAD OWNERSHIP AND / OR CONTROL OF KUDER, SMOLLAR & FRIEDMAN, P.C. WHOLLY CONTRADICTS BOTH FACT AND LAW.

64.    Kuder Defendants' statement in this regard defies all logic.  Defendant Peterson's ability and

predisposition to cause fraudulent documents and statements to be prepared and issued by the Kuder firm

and its employees, with the apparent knowledge and complicity of the principals of that firm, is now self-

evident.  Likewise, self-evident is her ability and practice to use the banking system to receive and then

---

[20] Kuder Defendants' Memorandum, p. 15, where they state *Tal* requires a "…showing that the predicates themselves involve a distinct threat of long-term racketeering activity ..." or that "…the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise…"
[21] See ¶¶19-25, above

plow back into that firm fees and other income derived directly and indirectly from those activities to advance her own professional and financial interests and, presumably, those of her firm and its principals.

65.    Peterson's explicit actions in using the Kuder firm to produce fraudulent documentation as documented herein as is a quintessentially excellent example of her "…ability to exercise dominion over it"[22] and Plaintiff is confident that in the process of discovery, this truth will be amply demonstrated.

66.    This said, while Kuder Defendants are entirely correct in stating that the RICO Complaint "…contains no allegations whatsoever that Defendants Peterson or Kuder, Smollar & Friedman, P.C. have acquired any interest in or control of Cobblestone, Ward & Klein, or the National Prostate Cancer Coalition…", they are incorrect in asserting explicitly, by artful implication, or by acts of omission, that the RICO Complaint in any way alleges that Kuder Defendants ever invested income derived from their pattern of racketeering activity in the acquisition of an interest in … Cobblestone or Ward & Klein…"[23] Plaintiff has never so claimed.

67.    What is apparent, instead, and what Plaintiff *has* claimed, is that the Ward and Kuder firms, acting together with the NPCC constituted a proscribed racketeering enterprise resulting from the collusion between Defendants Peterson and Schoenfeld, between Defendants Schoenfeld and Atkins, and by the actions of Atkins relative to the National Prostate Cancer Coalition.  In falsely stating that Plaintiff claims anything else, Kuder Defendants intentionally create yet another straw man issue that they then attempt to shoot down.

68.    What Plaintiff's RICO complaint also does state, and what Kuder Defendants' own Motions filed in this Court confirm, is that:

    a.    Defendant Peterson has asserted "…some ownership of the enterprise [Kuder, Smollar & Friedman, P.C.] *or* an ability to exercise dominion over it…."[24]  for the purposes of engaging in illicit activities proscribed by RICO,

    b.    the principals of the Kuder firm knew, or should have known, that this was happening,

---

[22] With reference to Kuder Defendants' assertions on pp 17-18 of their Memorandum.
[23] P. 15, Kuder Defendants' Memorandum
[24] *Ibid*, pp. 17-18

c.    to this day, Defendants Peterson along with the principals of the Kuder firm intentionally continue their illicit practices and turn a blind eye to their illegality, and

d.    these illicit activities have now touched this Court.

## KUDER DEFENDANTS FALSELY ARGUE IN §F THAT PLAINTIFF IS CLAIMING THAT THE SO-CALLED COBBLESTONE MATTER IS THE BASIS FOR A "PATTERN" OF RACKETEERING

69.    On p 15 of their Memorandum, Kuder Defendants assert that "...the lone dispute between Cobblestone, et al., and Brody, over the renovation of 7612 14th Street, N.W., Washington, D.C., cannot be the basis of a "pattern" of racketeering..."

70.    A careful reading of the RICO Complaint shows that Plaintiff has never claimed that the "...lone dispute..." so artfully identified by Kuder Defendants was ever a part of Defendants' racketeering activities. Instead, Plaintiff has claimed, and compelling, voluminous evidence exists (much of it already delivered to Plaintiff, with more certain to emerge during discovery), that Defendants Atkins and Samuels did use and convert Cobblestone Associates LLP (in the case of both Atkins and Samuels) and the NPCC (in the case of Atkins alone as NPCC's CEO) to racketeering enterprises.

## IV.    CONCLUSION

**WHEREFORE,** for all the reasons set forth above and also in the above-referenced Motion to Remand, Plaintiff requests that this Court agree to that Motion, a copy of which is attached hereto, based on the facts and precedents cited therein as well as the facts and precedents cited above, and to award such other relief as is just as a result of Kuder Defendants' *prima facie* efforts to fraudulently deceive the Court.

Bethesda, Maryland
November 30, 2007

Respectfully submitted by:

_____

Clifford L. Brody
*pro se*

| | |
|---|---|
| **From:** | USPS_Shipping_Services@usps.com |
| **Sent:** | Monday, October 22, 2007 4:32 PM |
| **To:** | clbrody@verizon.net |
| **Subject:** | Click-N-Ship(R) Payment Confirmation |

Acct #: ▓▓▓▓▓

Dear CLIFFORD L BRODY:

This is an email confirmation for your order of 4 online shipping labels with postage. Your credit card will be charged the following amount:

Transaction Number: 100685955
Print Date/Time: 10/22/2007 11:36 AM CDT
Postage Amount: $65.00
Credit Card Number: XXXX XXXX XXXX 3636

Express Mail Flat Rate Env # EO 939 786 843 US (Sequence Number 1 of 4)
Shipped to:   KATHRINA PETERSON
            KUDER, SMOLLAR, FRIEDMAN
            1350 CONNECTICUT AVE NW
            WASHINGTON DC 20036-1722

Express Mail Flat Rate Env # EO 939 786 830 US (Sequence Number 2 of 4)
Shipped to:   DAVID SCHOENFELD
            WARD & KLEIN, CHARTERED
            2275 RESEARCH BLVD
            STE 720
            ROCKVILLE MD 20850-6202

Express Mail Flat Rate Env # EO 939 786 826 US (Sequence Number 3 of 4)
Shipped to:   RICHARD ATKINS, CEO
            NATIONAL PROSTATE CANCER COALITION
            1154 15TH ST NW
            WASHINGTON DC 20005-1706

Express Mail Flat Rate Env # EO 939 786 812 US (Sequence Number 4 of 4)
Shipped to:   RICHARD ATKINS
            7612 14TH ST NW
            WASHINGTON DC 20012-1402

**EXHIBIT A**

1


**UNITED STATES POSTAL SERVICE**

Track & Confirm       FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: EO93 9786 843U S
Detailed Results:

- **Delivered, October 23, 2007, 11:11 am, WASHINGTON, DC 20036**
- **Arrival at Unit, October 23, 2007, 5:48 am, WASHINGTON, DC 20045**
- **Processed, October 22, 2007, 6:36 pm, WASHINGTON, DC 20074**
- **Acceptance, October 22, 2007, 2:09 pm, WASHINGTON, DC 20016**
- **Electronic Shipping Info Received, October 22, 2007**

( < Back )            ( Return to USPS.com Home > )

**Track & Confirm**

Enter Label/Receipt Number.

( Go > )

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email.  ( Go > )

**Proof of Delivery**

Verify who signed for your item by email, fax, or mail.  ( Go > )

---

Site Map     Contact Us     Forms     Gov't Services     Jobs     Privacy Policy     Terms of Use     National & Premier Accounts

Copyright© 1999-2007 USPS. All Rights Reserved.       No FEAR Act EEO Data       FOIA

C2

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MARYLAND

CLIFFORD L. BRODY

                  Plaintiff
                  *pro se*

v.

RICHARD ATKINS, CYNTHIA SAMUELS,
COBBLESTONE ASSOCIATES LLP,
DAVID M. SCHOENFELD,
WARD & KLEIN CHARTERED,
KATHRINA PETERSEN,
KUDER, SMOLLAR & FRIEDMAN, P.C.,
NATIONAL PROSTATE CANCER
COALITION,

                  Defendants

Adversary Proceeding 07-00902
Southern District of Maryland

*Related Case:*
CA 1:07-cv-01899-RMC
District for District of Columbia

*Related Case:*
Chapter 13: 07-11415-TJC
Southern District of Maryland

## PLAINTIFF'S RESPONSE TO NOTICE OF REMOVAL AND PLAINTIFF'S MOTION TO REMAND

COMES NOW Plaintiff Clifford L. Brody before the Federal District Court for the

Southern District of Maryland with a Motion to Remand the Notice of Removal ("Notice")

submitted on November 5, 2007 to this Court, and to the Federal District Court for the District of

Columbia under praecipe, by Defendants Richard Atkins ("Atkins"), Cynthia Samuels

("Samuels"), Cobblestone Associates LLP ("Cobblestone"), David Schoenfeld ("Schoenfeld"),

and Ward & Klein, Chartered ("Ward") (collectively referred to within this document as

"Movants").

In their Notice, Movants seek to remove from Federal District Court for the District of Columbia to the Federal District Court for the Southern District of Maryland the civil RICO complaint, 1:07-cv-01899-RMC filed by Plaintiff on October 22, 2007.

There is no basis either in law, precedent, or fact to allow for removal such as Movants have requested. Underlying federal statutes clearly do not allow for such a removal, overwhelming precedent established by federal courts and the Supreme Court confirm no basis for removal, and there is no fact or circumstance attendant to this case that argues otherwise.[1]

Plaintiff also respectfully asks the Court to order such remedies as it may deem appropriate if it agrees, as is presented below, that Movants purposefully have done harm to this Court as well as Plaintiff in improperly attempting to "forum shop" in contradiction of law, precedent, and established Federal Rules of Civil Procedure.

## NEITHER FEDERAL LAW NOR ESTABLISHED PRECEDENT ALLOWS FOR REMOVAL AS SOUGHT BY MOVANTS.

1. Movants have not satisfied any statutory, procedural, or precedential criteria that would support a virtually unprecedented call for removal of Plaintiff's RICO filing from the Federal District Court for the District of Columbia to Federal District Court for the Southern District of Maryland. They instead appear to be inventing new law to fit with their goal of improperly preventing the orderly administration of justice at the Federal District Court for the District of Columbia.

---

[1] Out of an abundance of caution, Plaintiff is submitting this same filing, with appropriate changes in the heading and title only, to the Federal District Court for the District of Columbia, since Plaintiff does not know at this time whether removal from that court to this Court has taken place and since Movants have initiated an Adversary Proceeding challenging the civil RICO complaint in this venue.

2.  Notwithstanding Movants' wholly fanciful and likewise wholly unsubstantiated construct[2] that a civil RICO complaint properly filed in federal court is in reality a counterclaim related to a matter arising out of a DC Superior Court proceeding or Chapter 13 filing, Movants in fact have not cited any authority in federal law that foresees, no less would call for or justify, the removal of a civil RICO complaint properly filed in and accepted by the _federal_ court where it _must_ be filed, to any other court.

3.  Provisions of the US code that speak to removal (e.g. 28 USC 1331; 1332; 1335, 1441) relate solely to disputes initially brought before a state court.  They do not authorize or even anticipate removal from one federal court to another.

4.  28 USC 1332, in establishing the legal framework for removal, does so with specific reference to the removal from a _state_ court to a federal court, and then only to resolve issues arising either from:

      a.  the existence of a federal question that properly should not be brought before a state court,  or

      b.  the parties to a given case having "diverse" [state] citizenship.

5.  The venue provisions with regard to filing a civil RICO complaint are clear on their face, namely that "…any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs (18 USC § 1965(a) Venue and Process).  All Defendants named in that RICO Complaint ("RICO Defendants"), including Movants, are residents of, have agents in, or practice their professions in the District of Columbia.

6.  Movants know, or should know as a result of their legal training or advice from their legal counsel, that a RICO filing is a federal question, and that with respect to this criterion,

---

[2] See ¶3, Notice of Removal

Plaintiff's filing of his Complaint at the US District Court for the District of Columbia was with a federal court, not a state court, and was correctly filed with that court.

    7. Movants likewise explicitly know that there is no diversity issue whatsoever raised by Plaintiff's filing of the RICO filing with the US District Court for the District of Columbia, since:

        a. the illegal racketeering actions of the RICO Defendants presented in considerable detail in the RICO filing (notwithstanding Defendants' claims to the contrary[3] in their Notice), took place in the District of Columbia,

        b. all RICO Defendants live and /or practice their professions in the District of Columbia, and

        c. the RICO filing is properly heard by the US District Court for the District of Columbia.

    8. More importantly, the inappropriate forum shopping intrinsic to the Movants' Notice is precisely the type of practice conclusively proscribed by the decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). The Supreme Court's decision in that case put an end to the common practice of federal courts, over the preceding 100+ years, of creating federal common law in the absence of specific controlling state law.

    9. On their face, Movants' arguments are a blatant attempt to ask the Court to create such common law, for example by presenting specious and absurd assertions that Plaintiff's RICO Complaint amounts to counterclaims against some parties who in fact have never filed any claims against Plaintiff.

---

[3] ¶5, Movants' Notice reads in part: "Debtor points to no misrepresentation, no false statement, no misleading evidence, no conspiratorial act to support or sustain the RICO Action"

10. Plaintiff's RICO Complaint in fact is wholly a *federal* question anchored in the substantive and substantial activities by the RICO Defendants. No matter how those activities may or may not relate to events related to any other case before any other court, they are explicitly proscribed by and actionable as a result of federal RICO statutes. Indeed, RICO statutes make clear that these are not "either-or" matters to be taken up in one court *or* another but rather can and should be taken up separately and apart in the RICO context.

11. Likewise, Movants' Notice is wholly inconsistent with the so-called Hanna tests. In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136 (1965), the issue was whether federal rules on service of process[4] should yield to state rules. Hanna announces a two-part test, put simply:

    a. if there is a valid Federal Rule on the subject, the rule is to be applied.

    b. in the absence of a federal rule on the point the [federal] court is to consider the problem in light of the twin aims of the Erie rule:

        i. discourage forum shopping and

        ii. avoid inequitable administration of laws.

12. Other precedential decisions apply in this matter as well:

    a. Richardson v Phillip Morris Inc., D.Md 1997, 950 F.Supp. 700: Entire body of precedent for removal and remand points to the necessity of remanding to [state] court;

    b. Rettig v Arlington Heights Federal Sav. & Loan Assn ND Ill 1975, 405 F.Supp. 819: In order to obtain removal, the controversy generally must be disclosed on the face of the complaint, *unaided by defendant's answer or petition for removal* (emphasis added);

---

[4] Plaintiff is aware that Movants' Notice does not explicitly take up the question of service of process but notes that it does so by implication.

c.  Griffen v Hooper-Holmes MD Fla 1976 413 FSupp 107: Crowded court calendar
not grounds for removal.

## MOVANTS HAVE FAILED TO MEET THE CONSENT REQUIREMENTS ATTENDANT TO REMOVAL

13. Any attempt to remove a case from one court to another, absent conformance to all consent requirements set forth in 28 USC 1404, should be rejected.

14. Movants, and certainly Defendants' Schoenfeld and Ward, know or have reason to know that 28 USC 1404 requires that all defendants must either sign or join in the notice of removal by filing some type of separate written consent.[5]

15. Movants know that they have not met this requirement, and that it is not sufficient for the removal notice merely to represent that all defendants consent.

16. The substantial body of decisions and precedent flowing from adjudicating the meaning of §1404 points to, among other factors, the consent requirements as a common-sense first and basic step to preclude disagreements among Defendants as to whether, where, and how a case, once removed, is adjudicated[6].

17. Movants and others of the RICO Defendants have already demonstrated profound substantive disagreement on core issues related to Plaintiff's RICO Complaint[7].

---

[5] see for example: Bernstein v Lind-Waldock & Co CA 7 (IL) 1984 738 F2nd 179;, Lapoint v MidAtlantic Settlement Services Inc DDC 2003 256 FSupp 2d 1; Chaghervand v Carefirst D.MD 1995, 909 F.Supp. 304.

[6] Rodrigues v Union Oil Co of Cal S.D. Cal 1954, 121 F.Supp. 824: All defendants must consent even if questions of service exist.

[7] Movants fundamentally disagree with others among the RICO Defendants, for example, as to whether the RICO Complaint is a "core proceeding"; see Movants' Notice and separate Motion to Dismiss ("Kuder Motion") filed by RICO Defendants Kuder, Smollar and Friedman PC and Kathrina Peterson. Plaintiff will respond separately to the Kuder Motion within the time prescribed in such matters.

## THERE IS NO STATUTE, LAW, OR PRECEDENT REQUIRING PLAINTIFF TO FILE A RICO COMPLAINT AS A CHAPTER 13 COUNTERCLAIM AS MOVANTS ASSERT.

18. Matters taken up in the RICO filing had and have nothing whatsoever to do with the substance of any of Atkins', Samuels', or Cobblestone' claims in the Superior Court case or their claims as filed in the Chapter 13 proceeding to which Movants refer in their Notice.

19. The RICO filing relates to serial illegal racketeering activities by Movants and other named parties not figuring at all in plaintiff claims either the Superior Court case or the Chapter 13 filing.

20. Though Movants would have this Court believe otherwise, Plaintiff is not obliged by 28 USC 1409 to file or pursue a civil RICO complaint in Bankruptcy Court merely because a Chapter 13 proceeding may involve some (but not all) parties also named in that RICO Complaint. Nor does § 1409 foresee a requirement that a person filing for Chapter 13 protection is somehow obliged to turn to the bankruptcy court for adjudication of matters unrelated to any creditor claim against his estate.

## MOVANTS' NOTICE CONFIRMS UNMISTAKEABLE CONFLICT OF INTEREST DISQUALIFING DEFENDANTS SCHOENFELD AND WARD FROM REPRESENTING ANY OTHER DEFENDANT IN THE RICO COMPLAINT, INCLUDING MATTERS RELATED TO REMOVAL.

21. Movants' submission of the Notice by "…Movants Richard Atkins, Cynthia Samuels, Cobblestone Associates, LLC; by and through counsel, David M. Schoenfeld, John C. Hanrahan, and Ward & Klein, Chartered…" confirms the explicit conflict of interest between, on the one hand, Atkins, Samuels, and Cobblestone, and, on the other, Schoenfeld and Ward itself with regard to the RICO Complaint.

7

22. Leaving aside the wholly speculative and unsubstantiated statement by Movants in their Notice that Plaintiff Brody is seeking to "conflict" any party from its chosen counsel in the Chapter 13 or Superior Court of the District of Columbia proceeding[8], it is well within this Court's authority, as defined by long-established law and precedent, to determine the existence of, and put an end to, the fundamental conflict of interest that exists in any instance where Schoenfeld and Ward, themselves Defendants in the RICO complaint, submit in any federal venue a filing, declaration, praecipe, notice (including the Notice), or any other form of communication on behalf of any other Defendant named in that Complaint.

23. Whether Atkins, Samuels, and Cobblestone as Schoenfeld's and Ward's clients may have agreed to waive the potential for any conflict (a factor not known to Plaintiff at this time) is of no consequence, nor is it required that there be proof that an actual conflict of interest exists. All relevant law, regulation, court rules, and applicable Codes of Professional Conduct point to the *potential* for such conflicts *and* the necessity to prevent that *potential* from being realized

24. Likewise, ample precedent at the federal level specifies what steps need to be taken, e.g. for counsel to withdraw from representation, in order to resolve such conflicts when the potential is present (see e.g. Estate of Heiser v. Islamic Republic of Iran, 466 F.Supp.2d 229 D.D.C. 12/22/2006).

25. As recently as March, 2007 in the US District Court for the District of Columbia, rulings have obtained that that "…information regarding a potential conflict of interest will be relevant to the trial court's determination of the applicable standard of review." (Wagener, Champoux et. al. v SBC Pension, 2007.DDC.0000216)

---

[8] ¶5, Movants' Notice reads in part: "…Debtor likely filed the frivolous RICO Action in an effort to harass the Movants, and possibly in an effort to "conflict" the undersigned from the bankruptcy action, effectively depriving them of counsel and/or unnecessarily driving up Richard Atkins' and Cynthia Samuels' costs…

26. Earlier rulings likewise emphasize the pre-emptive steps that the Court can and should take to preclude conflicts of interest from arising *before* they actually occur and adversely affect one or more parties. Substantial discretion accrues to the Court to "...envisage scenarios..." during the course of future trial proceedings and to prevent such conflicts from arising (see e.g. First American Corp. v. Sheikh Zayed Bin Sultan Al, 17 F. Supp. 2d 10 D.D.C. 08/13/1998; United States v. Childress, 731 F. Supp. 547 D.D.C. 03/1/1990[9]).

27. Notably, the Court deciding the Childress case referred explicitly to Wheat v. United States, 108 S. Ct. 1692, 486 U.S. 153 (U.S. 05/23/1988), in which Justice Rehnquist stated in part:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest ... not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. *Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.* (emphasis added)

> For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a

---

[9] Although the facts of the Childress case are fundamentally different from the present matter, the scope of Judge Richey's language in the Childress case is broad and particularly illustrative of the legitimacy of the Court's anticipating and then precluding even the hint of such conflicts by requiring counsel to withdraw or be replaced: "...the Court can envision at least two scenarios arising during the course of the trial in which Mr. Rochon would have to choose between the two ethical duties of defending Ms. Perry zealously within the bounds of the law, see Code Canon 7; DR 7-101; DR 7-102; accord D.C. Rules 1.3, and not revealing confidential information obtained from H. S., Jr...." " ... While other conflicts may arise, these scenarios demonstrate how this *potential* (emphasis added) conflict of interest could become real and very problematic during the course of this trial. Moreover, the Court is satisfied that the possibility of such a conflict arising is neither fanciful nor minimal..." "...Nor is it improper for this Court to disqualify Mr. Rochon merely because it cannot predict with certainty whether this potential conflict of interest will become a full-blown conflict during trial..."

potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses. In the circumstances of this case, with the motion for substitution of counsel made so close to the time of trial, the District Court relied on instinct and judgment based on experience in making its decision. We do not think it can be said that the court exceeded the broad latitude which must be accorded it in making this decision.

28. A situation such as anticipated by a full and fair hearing of the RICO Complaint, in which Defendants Schoenfeld and Ward may be found to have acted illegally with or without the consent of their clients Atkins, Samuels, and Cobblestone clearly creates the potential for pitting the interests of some of the Defendants against others, namely Schoenfeld and Ward against Atkins, Samuels, and Cobblestone.

## NO FACT, LAW, OR PRECEDENT POINTS TO PLAINTIFF'S RICO COMPLAINT AS A COUNTERCLAIM AGAINST THE ESTATE OF ANY PERSON FILING A CLAIM AGAINST PLAINTIFF'S ESTATE

29. Movants have asserted that matters taken up in the RICO Complaint amount to a counterclaim against one or more parties to a separate matter before the Superior Court of the District of Columbia. In doing so, they have intentionally withheld from this Court their knowledge that, consistent with the rules of the DC Superior Court, Brody as Defendant in the Superior Court case in fact presented a specific counterclaim based on the specific contract dispute brought to the Superior Court of the District of Columbia by Plaintiffs Atkins et al.

30. Likewise, in their Notice, Movants assert without basis in law or fact that Plaintiff's RICO Complaint is a counterclaim against the estate of Defendants Atkins, Samuels, and Cobblestone arising from Plaintiff's Chapter 13 filing, in which those Defendants have filed a claim against Plaintiff's estate.

31. Movants know, or should know, that one of the fundamental characteristics of any counterclaim is that it is filed in response to a plaintiff's complaint to assert that it was the

plaintiff -- not the defendant -- who committed the legal wrongs specified in a plaintiff's original

complaint, and that as a result it is the defendant who is entitled to money damages or other relief

based on the same set of circumstances.

32. Movants are plainly aware that in contrast to this criterion, Plaintiff's RICO

Complaint seeks adjudication regarding illegal actions by the RICO Defendants listed therein

that:

     a.  are not at all the events specified by Atkins, Samuels, or Cobblestone in their

         original complaint submitted to the Superior Court of the District of Columbia,

     b.  could not have possibly been anticipated by any party to that original Superior

         Court complaint, and

     c.  identify actions by persons who in no way were parties to or involved in the

         events set forth in the original Superior Court complaint.

33. Movants also know as fact that with the exception of Atkins, Samuels, and

Cobblestone, none of the Defendants named in the RICO filing have ever filed any claim

whatsoever with respect to the Plaintiff's (Debtor's) estate.

34. Movants know, or should know, that the provisions of Federal Rules of Civil

Procedure (FRCP) Rule 13 (a) through (c) (Counterclaim and Cross Claim) are for the most part

permissive rather than directive, and that even in cases of a compulsory counterclaim, a

counterclaim is to be made only "…if it arises out of the transaction or occurrence that is the

subject matter of the opposing party's claim and *"and does not require for its adjudication the*

*presence of third parties of whom the Court cannot acquire jurisdiction."* (emphasis added).

The equivalent DC Superior Court Rule 13 sections unequivocally echo these conditions and in

addition emphasize their applicability in matters where that court has no jurisdiction. That court does not have, nor does it seek, jurisdiction in federal Civil RICO complaints.

## MOVANTS' CLAIMS THAT PLAINTIFF'S RICO COMPLAINT IS "FRIVOLOUS" AND "LIKELY" TO RESULT FROM ONE OR ANOTHER FACTOR IS WHOLLY WITHOUT FOUNDATION IN FACT, NOR ARE THEY SUPPORTED BY EVIDENCE

35. Movants' assertion in ¶5 of their Notice is entirely speculative in nature, that Plaintiff "likely" filed the RICO Complaint to harass Movants, has filed the RICO Complaint as a "desperate attempt" to achieve something, and has filed the RICO Complaint to "conflict" anyone from any bankruptcy action. Notably, Movants have not presented any evidence to support their indeed quite frivolous assertions.

36. Movants know, or should know, that all provisions of FRCP Rule 8 (General Rules of Pleading) require that an initial claim be "short and plain" rather than conclusive in all regards, and in no sense require that a given complaint naming parties must include *ab initio* all conclusive evidence confirming the initial claim(s).

37. Movants clearly know, or should know, that the FRCP establishes procedures that specify, after a complaint is filed,

    a.  when and how parties are to furnish and determine the existence and validity of such evidence, some of which may result from discovery, interrogatories, depositions, and the like that can only take place after the initial responses are filed in response to the complaint,

    b.  when and how, barring removal to another venue, the court of original jurisdiction is the proper venue for decisions relating to the validity of any assertions made by any of the involved parties, and

c. all questions arising in the court where the RICO Complaint has been filed and accepted should be resolved in that venue.

38. Plaintiff notes that Defendants named in the RICO Complaint have not responded to the initial Complaint within the period prescribed by law and the FRCP.

**WHEREFORE,** Plaintiff prays that, for all of the foregoing reasons, the Notice submitted by Movants together with any filings submitted by any RICO Defendants on the basis thereof, be quashed and / or rejected, that the RICO Defendants be ordered to respond to the RICO Complaint without any further delay whatsoever, that in the event the RICO Complaint has been transferred from the US District Court for the District of Columbia to the US District Court for the Southern District of Maryland, it be returned to the jurisdiction of the US District Court for the District of Columbia to be heard there as originally assigned, and that Movants be sanctioned for their efforts to forum shop as the Court deems appropriate.

Bethesda, Maryland
November 19, 2007

Respectfully submitted by:

Clifford L. Brody
*pro se*

Clifford L. Brody
4914 Crescent Street
Bethesda, Maryland 20816-1702
Home   301-320-3262
Cell    202-213-3076
Email  clbrody@verizon.net

## **AFFIRMATION**

I, Clifford L. Brody, solemnly swear or affirm under criminal penalties for the making of a false statement that I have read the foregoing Motion and that the factual statements made in it are true and correct to the best of my personal knowledge, information and belief.

*Nov 19, 2007*
Date

Clifford L. Brody

Copies to:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _19th_ day of _November_, 2007, a copy of the foregoing was forwarded by First Class Mail to Defendants at their offices at:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

Clifford L. Brody

FILED
2007 NOV 19 A 9:30

1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MARYLAND

CLIFFORD L. BRODY

Plaintiff
*pro se*

v.

RICHARD ATKINS, CYNTHIA SAMUELS,
COBBLESTONE ASSOCIATES LLP,
DAVID M. SCHOENFELD,
WARD & KLEIN CHARTERED,
KATHRINA PETERSEN,
KUDER, SMOLLAR & FRIEDMAN, P.C.,
NATIONAL PROSTATE CANCER
COALITION,

Defendants

Adversary Proceeding 07-00902
Southern District of Maryland

*Related Case*:
CA 1:07-cv-01899-RMC
District for District of Columbia

*Related Case*:
Chapter 13: 07-11415-TJC
Southern District of Maryland

## DRAFT ORDER

Upon consideration of Plaintiff's Motion to Remand the Notice of Removal filed by Defendants Richard Atkins, Cynthia Samuels, Cobblestone Associates LLP, David M. Schoenfeld, and Ward & Klein Chartered, and to disqualify RICO Defendants Ward & Klein Chartered and David M. Schoenfeld from representing any other Defendants in the civil RICO action CA 1:07-cv-01899-RMC, it is this ____ day of _____, 2007 hereby,

**ORDERED,** that Defendants' Notice of Removal *is* quashed, and further

**ORDERED,** that the above-referenced RICO Complaint is remanded to the Federal District Court for the District of Columbia, and further

1

**ORDERED,** that RICO Defendants Ward & Klein Chartered and David M. Schoenfeld are disqualified from representing in this venue any other Defendants in any matter related to the civil RICO action CA 1:07-cv-01899-RMC.

_____

The Honorable
United States District Court for the
Southern District of Maryland

Copies to:

Clifford L. Brody
4914 Crescent Street
Bethesda, Maryland 20816-1702

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| CLIFFORD L. BRODY<br><br>                       Plaintiff<br>                       *pro se*<br><br>v.<br><br>RICHARD ATKINS, CYNTHIA SAMUELS,<br>COBBLESTONE ASSOCIATES LLP,<br>DAVID M. SCHOENFELD,<br>WARD & KLEIN CHARTERED,<br>KATHRINA PETERSEN,<br>KUDER, SMOLLAR & FRIEDMAN, P.C.,<br>NATIONAL PROSTATE CANCER<br>COALITION,<br><br>                       Defendants | Adversary Proceeding 07-00902<br>Southern District of Maryland<br><br>*Related Cases:*<br><br>Chapter 13: 07-11415-TJC<br>Southern District of Maryland<br><br>CA 1:07-cv-01899-RMC<br>District for District of Columbia |

## DRAFT ORDER

Upon consideration of Plaintiff's Motion to dismiss motions filed by Defendants Richard Atkins,

Cynthia Samuels, Cobblestone Associates LLP, David M. Schoenfeld, Ward & Klein Chartered, Kathrina

Petersen, Kuder, Smollar & Friedman, P.C., And National Prostate Cancer Coalition, it is this ____ day of

_____, 2007 hereby:

**ORDERED,** that Defendants' Motions to remove to this Court and/or dismiss Plaintiff's RICO

Complaint and/or hear Plaintiff's RICO Complaint in this Court are separately and collectively DENIED

and DISMISSED with prejudice, and further

**ORDERED,** that Defendants strictly adhere to FRCP requirements for submitting a timely reply

to Plaintiff's RICO Complaint, and that those replies be filed with the Federal District Court for the

District of Columbia no later than ten (10) calendar days after the date of this ruling, and further



**ORDERED,** that Defendants notify without any delay whatsoever the Federal District Court for the District of Columbia of their intent to submit their replies to Plaintiff's RICO Complaint within the deadlines set forth in this Order, and further

**ORDERED,** that the Clerk of the Court transmit copies of this Order to the Federal District Court for the District of Columbia, to counsel for each of the Defendant parties named in Plaintiff's RICO Complaint, and to Plaintiff.

_____
The Honorable Judge Thomas J. Catliota
United States District Court for the Southern District of Maryland

Copies to:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

COPY

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MARYLAND

CLIFFORD L. BRODY

Plaintiff
*pro se*

v.

RICHARD ATKINS, CYNTHIA SAMUELS,
COBBLESTONE ASSOCIATES LLP,
DAVID M. SCHOENFELD,
WARD & KLEIN CHARTERED,
KATHRINA PETERSEN,
KUDER, SMOLLAR & FRIEDMAN, P.C.,
NATIONAL PROSTATE CANCER
COALITION,

Defendants

Adversary Proceeding 07-00902
Southern District of Maryland

*Related Case*:
CA 1:07-cv-01899-RMC
District for District of Columbia

*Related Case*:
Chapter 13: 07-11415-TJC
Southern District of Maryland

## PLAINTIFF'S RESPONSE TO NOTICE OF REMOVAL AND PLAINTIFF'S MOTION TO REMAND

COMES NOW Plaintiff Clifford L. Brody before the Federal District Court for the

Southern District of Maryland with a Motion to Remand the Notice of Removal ("Notice")

submitted on November 5, 2007 to this Court, and to the Federal District Court for the District of

Columbia under praecipe, by Defendants Richard Atkins ("Atkins"), Cynthia Samuels

("Samuels"), Cobblestone Associates LLP ("Cobblestone"), David Schoenfeld ("Schoenfeld"),

and Ward & Klein, Chartered ("Ward") (collectively referred to within this document as

"Movants").

In their Notice, Movants seek to remove from Federal District Court for the District of Columbia to the Federal District Court for the Southern District of Maryland the civil RICO complaint, 1:07-cv-01899-RMC filed by Plaintiff on October 22, 2007.

There is no basis either in law, precedent, or fact to allow for removal such as Movants have requested. Underlying federal statutes clearly do not allow for such a removal, overwhelming precedent established by federal courts and the Supreme Court confirm no basis for removal, and there is no fact or circumstance attendant to this case that argues otherwise.[1]

Plaintiff also respectfully asks the Court to order such remedies as it may deem appropriate if it agrees, as is presented below, that Movants purposefully have done harm to this Court as well as Plaintiff in improperly attempting to "forum shop" in contradiction of law, precedent, and established Federal Rules of Civil Procedure.

## NEITHER FEDERAL LAW NOR ESTABLISHED PRECEDENT ALLOWS FOR REMOVAL AS SOUGHT BY MOVANTS.

1. Movants have not satisfied any statutory, procedural, or precedential criteria that would support a virtually unprecedented call for removal of Plaintiff's RICO filing from the Federal District Court for the District of Columbia to Federal District Court for the Southern District of Maryland. They instead appear to be inventing new law to fit with their goal of improperly preventing the orderly administration of justice at the Federal District Court for the District of Columbia.

---

[1] Out of an abundance of caution, Plaintiff is submitting this same filing, with appropriate changes in the heading and title only, to the Federal District Court for the District of Columbia, since Plaintiff does not know at this time whether removal from that court to this Court has taken place and since Movants have initiated an Adversary Proceeding challenging the civil RICO complaint in this venue.

2. Notwithstanding Movants' wholly fanciful and likewise wholly unsubstantiated construct[2] that a civil RICO complaint properly filed in federal court is in reality a counterclaim related to a matter arising out of a DC Superior Court proceeding or Chapter 13 filing, Movants in fact have not cited any authority in federal law that foresees, no less would call for or justify, the removal of a civil RICO complaint properly filed in and accepted by the *federal* court where it *must* be filed, to any other court.

3. Provisions of the US code that speak to removal (e.g. 28 USC 1331; 1332; 1335; 1441) relate solely to disputes initially brought before a state court. They do not authorize or even anticipate removal from one federal court to another.

4. 28 USC 1332, in establishing the legal framework for removal, does so with specific reference to the removal from a *state* court to a federal court, and then only to resolve issues arising either from:

    a. the existence of a federal question that properly should not be brought before a state court, or

    b. the parties to a given case having "diverse" [state] citizenship.

5. The venue provisions with regard to filing a civil RICO complaint are clear on their face, namely that "...any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs (18 USC § 1965(a) Venue and Process). All Defendants named in that RICO Complaint ("RICO Defendants"), including Movants, are residents of, have agents in, or practice their professions in the District of Columbia.

6. Movants know, or should know as a result of their legal training or advice from their legal counsel, that a RICO filing is a federal question, and that with respect to this criterion,

---

[2] See ¶3, Notice of Removal

Plaintiff's filing of his Complaint at the US District Court for the District of Columbia was with a federal court, not a state court, and was correctly filed with that court.

7. Movants likewise explicitly know that there is no diversity issue whatsoever raised by Plaintiff's filing of the RICO filing with the US District Court for the District of Columbia, since:

    a. the illegal racketeering actions of the RICO Defendants presented in considerable detail in the RICO filing (notwithstanding Defendants' claims to the contrary[3] in their Notice), took place in the District of Columbia,

    b. all RICO Defendants live and /or practice their professions in the District of Columbia, and

    c. the RICO filing is properly heard by the US District Court for the District of Columbia.

8. More importantly, the inappropriate forum shopping intrinsic to the Movants' Notice is precisely the type of practice conclusively proscribed by the decision in Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). The Supreme Court's decision in that case put an end to the common practice of federal courts, over the preceding 100+ years, of creating federal common law in the absence of specific controlling state law.

9. On their face, Movants' arguments are a blatant attempt to ask the Court to create such common law, for example by presenting specious and absurd assertions that Plaintiff's RICO Complaint amounts to counterclaims against some parties who in fact have never filed any claims against Plaintiff.

---

[3] ¶5, Movants' Notice reads in part: "Debtor points to no misrepresentation, no false statement, no misleading evidence, no conspiratorial act to support or sustain the RICO Action"

10. Plaintiff's RICO Complaint in fact is wholly a *federal* question anchored in the substantive and substantial activities by the RICO Defendants. No matter how those activities may or may not relate to events related to any other case before any other court, they are explicitly proscribed by and actionable as a result of federal RICO statutes. Indeed, RICO statutes make clear that these are not "either-or" matters to be taken up in one court *or* another but rather can and should be taken up separately and apart in the RICO context.

11. Likewise, Movants' Notice is wholly inconsistent with the so-called Hanna tests. In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136 (1965), the issue was whether federal rules on service of process[4] should yield to state rules. Hanna announces a two-part test, put simply:

    a. if there is a valid Federal Rule on the subject, the rule is to be applied.

    b. in the absence of a federal rule on the point the [federal] court is to consider the problem in light of the twin aims of the Erie rule:

        i. discourage forum shopping and

        ii. avoid inequitable administration of laws.

12. Other precedential decisions apply in this matter as well:

    a. Richardson v Phillip Morris Inc., D.Md 1997, 950 F.Supp. 700: Entire body of precedent for removal and remand points to the necessity of remanding to [state] court;

    b. Rettig v Arlington Heights Federal Sav. & Loan Assn ND Ill 1975, 405 F.Supp. 819: In order to obtain removal, the controversy generally must be disclosed on the face of the complaint, *unaided by defendant's answer or petition for removal* (emphasis added);

---

[4] Plaintiff is aware that Movants' Notice does not explicitly take up the question of service of process but notes that it does so by implication.

    c.  Griffen v Hooper-Holmes MD Fla 1976 413 FSupp 107: Crowded court calendar not grounds for removal.

## MOVANTS HAVE FAILED TO MEET THE CONSENT REQUIREMENTS ATTENDANT TO REMOVAL

13. Any attempt to remove a case from one court to another, absent conformance to all consent requirements set forth in 28 USC 1404, should be rejected.

14. Movants, and certainly Defendants' Schoenfeld and Ward, know or have reason to know that 28 USC 1404 requires that all defendants must either sign or join in the notice of removal by filing some type of separate written consent.[5]

15. Movants know that they have not met this requirement, and that it is not sufficient for the removal notice merely to represent that all defendants consent.

16. The substantial body of decisions and precedent flowing from adjudicating the meaning of §1404 points to, among other factors, the consent requirements as a common-sense first and basic step to preclude disagreements among Defendants as to whether, where, and how a case, once removed, is adjudicated[6].

17. Movants and others of the RICO Defendants have already demonstrated profound substantive disagreement on core issues related to Plaintiff's RICO Complaint[7].

---

[5] see for example: Bernstein v Lind-Waldock & Co CA 7 (IL) 1984 738 F2nd 179;, Lapoint v MidAtlantic Settlement Services Inc DDC 2003 256 FSupp 2d 1; Chaghervand v Carefirst D.MD 1995, 909 F.Supp. 304.

[6] Rodrigues v Union Oil Co of Cal S.D. Cal 1954, 121 F.Supp. 824: All defendants must consent even if questions of service exist.

[7] Movants fundamentally disagree with others among the RICO Defendants, for example, as to whether the RICO Complaint is a "core proceeding"; see Movants' Notice and separate Motion to Dismiss ("Kuder Motion") filed by RICO Defendants Kuder, Smollar and Friedman PC and Kathrina Peterson. Plaintiff will respond separately to the Kuder Motion within the time prescribed in such matters.

## THERE IS NO STATUTE, LAW, OR PRECEDENT REQUIRING PLAINTIFF TO FILE A RICO COMPLAINT AS A CHAPTER 13 COUNTERCLAIM AS MOVANTS ASSERT.

18. Matters taken up in the RICO filing had and have nothing whatsoever to do with the substance of any of Atkins', Samuels', or Cobblestone' claims in the Superior Court case or their claims as filed in the Chapter 13 proceeding to which Movants refer in their Notice.

19. The RICO filing relates to serial illegal racketeering activities by Movants and other named parties not figuring at all in plaintiff claims either the Superior Court case or the Chapter 13 filing.

20. Though Movants would have this Court believe otherwise, Plaintiff is not obliged by 28 USC 1409 to file or pursue a civil RICO complaint in Bankruptcy Court merely because a Chapter 13 proceeding may involve some (but not all) parties also named in that RICO Complaint. Nor does § 1409 foresee a requirement that a person filing for Chapter 13 protection is somehow obliged to turn to the bankruptcy court for adjudication of matters unrelated to any creditor claim against his estate.

## MOVANTS' NOTICE CONFIRMS UNMISTAKEABLE CONFLICT OF INTEREST DISQUALIFING DEFENDANTS SCHOENFELD AND WARD FROM REPRESENTING ANY OTHER DEFENDANT IN THE RICO COMPLAINT, INCLUDING MATTERS RELATED TO REMOVAL.

21. Movants' submission of the Notice by "...Movants Richard Atkins, Cynthia Samuels, Cobblestone Associates, LLC; by and through counsel, David M. Schoenfeld, John C. Hanrahan, and Ward & Klein, Chartered..." confirms the explicit conflict of interest between, on the one hand, Atkins, Samuels, and Cobblestone, and, on the other, Schoenfeld and Ward itself with regard to the RICO Complaint.

22. Leaving aside the wholly speculative and unsubstantiated statement by Movants in their Notice that Plaintiff Brody is seeking to "conflict" any party from its chosen counsel in the Chapter 13 or Superior Court of the District of Columbia proceeding[8], it is well within this Court's authority, as defined by long-established law and precedent, to determine the existence of, and put an end to, the fundamental conflict of interest that exists in any instance where Schoenfeld and Ward, themselves Defendants in the RICO complaint, submit in any federal venue a filing, declaration, praecipe, notice (including the Notice), or any other form of communication on behalf of any other Defendant named in that Complaint.

23. Whether Atkins, Samuels, and Cobblestone as Schoenfeld's and Ward's clients may have agreed to waive the potential for any conflict (a factor not known to Plaintiff at this time) is of no consequence, nor is it required that there be proof that an actual conflict of interest exists. All relevant law, regulation, court rules, and applicable Codes of Professional Conduct point to the _potential_ for such conflicts _and_ the necessity to prevent that _potential_ from being realized

24. Likewise, ample precedent at the federal level specifies what steps need to be taken, e.g. for counsel to withdraw from representation, in order to resolve such conflicts when the potential is present (see e.g. Estate of Heiser v. Islamic Republic of Iran, 466 F.Supp.2d 229 D.D.C. 12/22/2006).

25. As recently as March, 2007 in the US District Court for the District of Columbia, rulings have obtained that that "…information regarding a potential conflict of interest will be relevant to the trial court's determination of the applicable standard of review." (Wagener, Champoux et. al. v SBC Pension, 2007.DDC.0000216)

---

[8] ¶5, Movants' Notice reads in part: "…Debtor likely filed the frivolous RICO Action in an effort to harass the Movants, and possibly in an effort to "conflict" the undersigned from the bankruptcy action, effectively depriving them of counsel and/or unnecessarily driving up Richard Atkins' and Cynthia Samuels' costs…

26. Earlier rulings likewise emphasize the pre-emptive steps that the Court can and should take to preclude conflicts of interest from arising *before* they actually occur and adversely affect one or more parties. Substantial discretion accrues to the Court to "…envisage scenarios…" during the course of future trial proceedings and to prevent such conflicts from arising (see e.g. First American Corp. v. Sheikh Zayed Bin Sultan Al, 17 F. Supp. 2d 10 D.D.C. 08/13/1998; United States v. Childress, 731 F. Supp. 547 D.D.C. 03/1/1990[9]).

27. Notably, the Court deciding the Childress case referred explicitly to Wheat v. United States, 108 S. Ct. 1692, 486 U.S. 153 (U.S. 05/23/1988), in which Justice Rehnquist stated in part:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest … not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. *Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them.*(emphasis added)
>
> For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a

---

[9] Although the facts of the Childress case are fundamentally different from the present matter, the scope of Judge Richey's language in the Childress case is broad and particularly illustrative of the legitimacy of the Court's anticipating and then precluding even the hint of such conflicts by requiring counsel to withdraw or be replaced: "…the Court can envision at least two scenarios arising during the course of the trial in which Mr. Rochon would have to choose between the two ethical duties of defending Ms. Perry zealously within the bounds of the law, see Code Canon 7; DR 7-101; DR 7-102; accord D.C. Rules 1.3, and not revealing confidential information obtained from H. S., Jr.…." " … While other conflicts may arise, these scenarios demonstrate how this *potential* (emphasis added) conflict of interest could become real and very problematic during the course of this trial. Moreover, the Court is satisfied that the possibility of such a conflict arising is neither fanciful nor minimal…" "…Nor is it improper for this Court to disqualify Mr. Rochon merely because it cannot predict with certainty whether this potential conflict of interest will become a full-blown conflict during trial…"

potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses. In the circumstances of this case, with the motion for substitution of counsel made so close to the time of trial, the District Court relied on instinct and judgment based on experience in making its decision. We do not think it can be said that the court exceeded the broad latitude which must be accorded it in making this decision.

28. A situation such as anticipated by a full and fair hearing of the RICO Complaint, in which Defendants Schoenfeld and Ward may be found to have acted illegally with or without the consent of their clients Atkins, Samuels, and Cobblestone clearly creates the potential for pitting the interests of some of the Defendants against others, namely Schoenfeld and Ward against Atkins, Samuels, and Cobblestone.

## NO FACT, LAW, OR PRECEDENT POINTS TO PLAINTIFF'S RICO COMPLAINT AS A COUNTERCLAIM AGAINST THE ESTATE OF ANY PERSON FILING A CLAIM AGAINST PLAINTIFF'S ESTATE

29. Movants have asserted that matters taken up in the RICO Complaint amount to a counterclaim against one or more parties to a separate matter before the Superior Court of the District of Columbia.  In doing so, they have intentionally withheld from this Court their knowledge that, consistent with the rules of the DC Superior Court, Brody as Defendant in the Superior Court case in fact presented a specific counterclaim based on the specific contract dispute brought to the Superior Court of the District of Columbia by Plaintiffs Atkins et al.

30. Likewise, in their Notice, Movants assert without basis in law or fact that Plaintiff's RICO Complaint is a counterclaim against the estate of Defendants Atkins, Samuels, and Cobblestone arising from Plaintiff's Chapter 13 filing, in which those Defendants have filed a claim against Plaintiff's estate.

31. Movants know, or should know, that one of the fundamental characteristics of any counterclaim is that it is filed in response to a plaintiff's complaint to assert that it was the

plaintiff -- not the defendant -- who committed the legal wrongs specified in a plaintiff's original complaint, and that as a result it is the defendant who is entitled to money damages or other relief based on the same set of circumstances.

32. Movants are plainly aware that in contrast to this criterion, Plaintiff's RICO Complaint seeks adjudication regarding illegal actions by the RICO Defendants listed therein that:

    a.  are not at all the events specified by Atkins, Samuels, or Cobblestone in their original complaint submitted to the Superior Court of the District of Columbia,

    b.  could not have possibly been anticipated by any party to that original Superior Court complaint, and

    c.  identify actions by persons who in no way were parties to or involved in the events set forth in the original Superior Court complaint.

33. Movants also know as fact that with the exception of Atkins, Samuels, and Cobblestone, none of the Defendants named in the RICO filing have ever filed any claim whatsoever with respect to the Plaintiff's (Debtor's) estate.

34. Movants know, or should know, that the provisions of Federal Rules of Civil Procedure (FRCP) Rule 13 (a) through (c) (Counterclaim and Cross Claim) are for the most part permissive rather than directive, and that even in cases of a compulsory counterclaim, a counterclaim is to be made  only "…if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and *"and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction."* (emphasis added). The equivalent DC Superior Court Rule 13 sections unequivocally echo these conditions and in

addition emphasize their applicability in matters where that court has no jurisdiction. That court does not have, nor does it seek, jurisdiction in federal Civil RICO complaints.

## MOVANTS' CLAIMS THAT PLAINTIFF'S RICO COMPLAINT IS "FRIVOLOUS" AND "LIKELY" TO RESULT FROM ONE OR ANOTHER FACTOR IS WHOLLY WITHOUT FOUNDATION IN FACT, NOR ARE THEY SUPPORTED BY EVIDENCE

35. Movants' assertion in ¶5 of their Notice is entirely speculative in nature, that Plaintiff "likely" filed the RICO Complaint to harass Movants, has filed the RICO Complaint as a "desperate attempt" to achieve something, and has filed the RICO Complaint to "conflict" anyone from any bankruptcy action. Notably, Movants have not presented any evidence to support their indeed quite frivolous assertions.

36. Movants know, or should know, that all provisions of FRCP Rule 8 (General Rules of Pleading) require that an initial claim be "short and plain" rather than conclusive in all regards, and in no sense require that a given complaint naming parties must include *ab initio* all conclusive evidence confirming the initial claim(s).

37. Movants clearly know, or should know, that the FRCP establishes procedures that specify, after a complaint is filed,

      a.   when and how parties are to furnish and determine the existence and validity of such evidence, some of which may result from discovery, interrogatories, depositions, and the like that can only take place after the initial responses are filed in response to the complaint,

      b.   when and how, barring removal to another venue, the court of original jurisdiction is the proper venue for decisions relating to the validity of any assertions made by any of the involved parties, and

c.  all questions arising in the court where the RICO Complaint has been filed and accepted should be resolved in that venue.

38. Plaintiff notes that Defendants named in the RICO Complaint have not responded to the initial Complaint within the period prescribed by law and the FRCP.

**WHEREFORE,** Plaintiff prays that, for all of the foregoing reasons, the Notice submitted by Movants together with any filings submitted by any RICO Defendants on the basis thereof, be quashed and / or rejected, that the RICO Defendants be ordered to respond to the RICO Complaint without any further delay whatsoever, that in the event the RICO Complaint has been transferred from the US District Court for the District of Columbia to the US District Court for the Southern District of Maryland, it be returned to the jurisdiction of the US District Court for the District of Columbia to be heard there as originally assigned, and that Movants be sanctioned for their efforts to forum shop as the Court deems appropriate.

Bethesda, Maryland
November 19, 2007

Respectfully submitted by:

Clifford L. Brody
*pro se*

Clifford L. Brody
4914 Crescent Street
Bethesda, Maryland 20816-1702
Home  301-320-3262
Cell  202-213-3076
Email  clbrody@verizon.net

## AFFIRMATION

I, Clifford L. Brody, solemnly swear or affirm under criminal penalties for the making of a false statement that I have read the foregoing Motion and that the factual statements made in it are true and correct to the best of my personal knowledge, information and belief.

Nov 19, 2007
Date

Clifford L. Brody

Copies to:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _19th_ day of _November_, 2007, a copy of the foregoing was forwarded by First Class Mail to Defendants at their offices at:

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718

Clifford L. Brody

1

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MARYLAND

CLIFFORD L. BRODY

                Plaintiff
                *pro se*

v.

RICHARD ATKINS, CYNTHIA SAMUELS,
COBBLESTONE ASSOCIATES LLP,
DAVID M. SCHOENFELD,
WARD & KLEIN CHARTERED,
KATHRINA PETERSEN,
KUDER, SMOLLAR & FRIEDMAN, P.C.,
NATIONAL PROSTATE CANCER
COALITION,

                Defendants

Adversary Proceeding 07-00902
Southern District of Maryland

*Related Case:*
CA 1:07-cv-01899-RMC
District for District of Columbia

*Related Case:*
Chapter 13: 07-11415-TJC
Southern District of Maryland

## DRAFT ORDER

Upon consideration of Plaintiff's Motion to Remand the Notice of Removal filed by

Defendants Richard Atkins, Cynthia Samuels, Cobblestone Associates LLP, David M.

Schoenfeld, and Ward & Klein Chartered, and to disqualify RICO Defendants Ward & Klein

Chartered and David M. Schoenfeld from representing any other Defendants in the civil RICO

action CA 1:07-cv-01899-RMC, it is this _____ day of _____, 2007 hereby,

      **ORDERED,** that Defendants' Notice of Removal is quashed, and further

      **ORDERED,** that the above-referenced RICO Complaint is remanded to the Federal

District Court for the District of Columbia, and further

1

**ORDERED,** that RICO Defendants Ward & Klein Chartered and David M. Schoenfeld

are disqualified from representing in this venue any other Defendants in any matter related to the

civil RICO action CA 1:07-cv-01899-RMC.

_____

The Honorable
United States District Court for the
Southern District of Maryland

Copies to:

Clifford L. Brody
4914 Crescent Street
Bethesda, Maryland 20816-1702

Richard Atkins
7612 14th Street NW
Washington DC 20012

Cynthia Samuels
7612 14th Street NW
Washington DC 20012

Cobblestone Associates LLP
c/o Richard Atkins
7612 14th Street NW
Washington DC 20012

David Schoenfeld
c/o Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Ward & Klein, Chartered
2275 Research Blvd., Suite 720
Rockville, MD 20850

Kathrina Peterson
Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

Kuder, Smollar & Friedman, P.C.
1350 Connecticut Avenue, NW Suite 600,
Washington, District of Columbia 20036

National Prostate Cancer Coalition
1154 Fifteenth Street, NW
Washington, DC 20005

Nancy L. Spencer-Grigsby
POB 958
Bowie, MD 20718